## UNION COAL CO. v. DAWLEY.

No. 13648—Opinion Filed Dec. 21, 1926.

Rehearing Denied March 8, 1927.

**Brokers—Sales of Coal by Sales Agent at Less Than List Price Acquiesced in by Principal—Nonliability of Agent.**

Where a producing coal company employs B. as its sales agent to sell all coal produced by its mine for a commission. and it is agreed that the sales agent shall sell the coal at the "list price" (the "list price" being a price agreed upon by the coal operators in a given vicinity for the purpose of preventing competition), and the sales agent at various times sells coal for less than the "list price," but for the highest and best price obtainable at the time, and the coal company accepts the sale, delivers the coal, and receives the sale price, less the agent's commission, without objection or complaint, and continues such course of dealing for a number of years, the company is estopped from recovering from the sales agent the difference between the "list price" and the price for which the coal was sold.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pittsburg County; Harve L. Melton, Judge.

Action by C. W. Dawley against the Union Coal Company. From the judgment, the latter appeals. Affirmed.

Guy L. Andrews, for plaintiff in error.

Moore & Harries, for defendant in error.

Opinion by JONES, C. This action was instituted in the district court of Pittsburg county by the defendant in error. C. W. Dawley, as plaintiff, against plaintiff in error, Union Coal Company, as defendant, to recover the sum of $18,790.02.

Plaintiff further alleges that the amount sued for was based on an open account between the defendant, Union Coal Company, and the Dow Coal Company, and that in February, 1915, the Dow Coal Company was adjudged a bankrupt, and thereafter Harry C. Clark, trustee in bankruptcy of the Dow Coal Company, sold and delivered to the plaintiff herein, C. W. Dawley, the open account of the bankrupt, Dow Coal Company, and that plaintiff is now the owner thereof.

The Union Coal Company filed its answer, first interposing a general denial to all the material allegations of the plaintiff's petition, and, second, by way of further answer, avers that it is not indebted to the plaintiff, C. W. Dawley, or to the Dow Coal Company, in the sum alleged; that prior to the institution of this suit the defendant, Union Coal Company, entered into an agreement with one W. E. Beaty, president of the Dow Coal Company, whose rights and claim the plaintiff herein obtained, and under the terms of such agreement the said W. E. Beaty, acting for and in behalf of the Dow Coal Company, agreed to sell the coal produced by the Union Coal Company, defendant herein, at the "list price" and on a commission of ten cents per ton for what is known as railroad coal, and for a commission of fifteen cents per ton for coal sold to the general trade, and further avers that the said Beaty, acting for and in behalf of the Dow Coal Company,

sold coal to various customers throughout the country, and made various and sundry overcharges for the commission on said sales amounting in the aggregate to more than $30,000, and that the said Dow Coal Company, by reason of such overcharges made by the said Beaty, is now indebted to the defendant, Union Coal Company, in the sum of more than $12,000, which is in excess of the amount claimed by the plaintiff, Dawley. And, third, by way of further answer, the defendant avers that if the said Beaty was not acting for the Dow Coal Company that he was president and general manager, and was in the exclusive charge and control of the business, and that the stockholders and directors of the Dow Coal Company had full knowledge of his acts, and of all moneys received for the sale of coal for the Union Coal Company, and that by reason of such knowledge the company was bound by the acts of its agent and managing officer for all sums charged and collected as the president of the Dow Coal Company; that he was also president of the defendant, Union Coal Company, and acting for such Union Coal Company as its president, and that his conduct, or course of dealing, between the Union Coal Company and the Dow Coal Company were the acts of said Union Coal Company, etc.

Upon the issues thus joined the matter was tried by the court without the intervention of a jury, and upon the hearing the matter was submitted to a referee, who made an audit and took evidence to determine the exact condition of the accounts between the Union Coal Company, plaintiff in error, and the Dow Coal Company, and made his finding of facts and conclusions of law, which were duly approved by the court, and judgment rendered accordingly in favor of the plaintiff, Dawley, and against the Union Coal Company, defendant, for the amount sued for. The findings of fact by the referee consisted of 13 specific findings, wherein the allegations of plaintiff's petition are sustained, and the remaining findings are to the effect substantially that the books and records of the coal company offered in evidence were substantially correct, and portrayed all of the transactions between these companies.

The sixth finding of fact sets forth the facts, as disclosed by the evidence, in so far as the overcharge is concerned, and is as follows:

"The condition of this account as shown by the books of the Dow Coal Company and that of the Union Coal Company was sub-stantially the same until after the bankruptcy of the Dow Coal Company, in February, 1915, when Mr. J. J. Clelland as assistant bookkeeper of Union Coal Company charged back on the Union Coal Company books against the Dow Coal Company some $43,000 estimated as loss made by sales under 'list prices,' overbalancing on its books all credits shown in favor of the Dow Coal Company. The 'list prices' being a gentleman's agreement between the coal operators as to prices different grades of coal should be sold."

And this finding of fact is in conformity to the evidence given by the said W. E. Beaty, president of the Dow Coal Company. There was no denial of the fact on the part of Beaty that he acted as sales agent for the defendant, Union Coal Company, appellant here, with the understanding that he was to receive a commission of ten, fifteen, and twenty-five cents per ton on the various grades of coal mined and sold by said company, and that he sold some of the coal for less than "list price," but that he always sold it for the best and highest prices obtainable, and at times and under conditions which he thought justified the sales as made, and was for the best interest of the Union Coal Company; that the Union Coal Company delivered the coal as sold, and received the proceeds of the sales less his commission, and it is agreed that no complaint or objections were ever made at any time as to any sales made by the said W. E. Beaty, and while there seems to be some controversy as to the binding effect of the "list price" agreement, and appellant seriously objects to it being termed a gentleman's agreement between the coal operators. As we understand it, it is very properly designated as such, and obviously amounts to nothing more nor less than an understanding between the various coal producers and operators in the vicinity of McAlester, and no doubt elsewhere, as to the prices of the various grades of coal mined in that vicinity, for the purpose of preventing competition. And we do not understand that an agreement of this kind is necessarily binding upon anyone, and that the fact that the sales agent, Beaty, sold coal for less than the "list price" in violation of the agreement and understanding of the operators generally, would not constitute any fraud upon the appellant. Union Coal Company, if in fact the said Beaty sold all coal at the highest and best price obtainable and under conditions and circumstances that were for the best interest of the Union Coal Company. Such conduct might be in violation of the gentleman's agreement, but such agreements are contrary to public policy and

have no binding effect in any particular, and in our judgment the courts of this country have not, and will not recognize the effect of such agreements or give validity to a contract based thereon.

The referee, as a conclusion of law, in the third paragraph thereof, finds as follows:

"I find that the officers, directors and stockholders of the Union Coal Company by checking, adjusting and accepting the returns of coal sale accounts made by the Dow Coal Company for six years' time where the sales and settlements were at times made at less than the 'list prices,' and no evidence furnished of any complaint or objection, are now estopped from claiming and collecting for coal furnished for sale for more than it was actually sold for."

Appellant seriously objects to this conclusion of law, and finding of fact coupled therewith, and says that there is no evidence of any acceptance of the sales with knowledge of the fact that same had been sold for less than the "list price." The evidence on this particular question is not direct, positive, and conclusive, but we think the referee and the court were justified in reaching this conclusion. It is evident that the coal company had knowledge of the amount of coal **and the** grade thereof sold and delivered under the sales made by the said Beaty, and that they received the sale price therefor, less the commission charged, and while the evidence does not disclose any computation or calculation determining the exact price per ton, we think it fair to assume that a coal company doing the volume of business that this company did, as disclosed by the record, who maintained an office with clerks, bookkeepers, and accountants, would necessarily know the price obtained for its coal, and we think the conclusion reached is correct, and supported by the evidence offered in the trial of the case, and that even though the agreement that the coal should be sold at "list prices" be binding, that the fact that the Union Coal Company delivered the coal, received the purchase price at various and sundry times during a period of five or six years without objection or complaint creates a condition or course of dealing that clearly justifies the plea of estoppel.

Numerous other questions are raised by appellant in its brief, but we do not find that same were raised in the trial court, and we deem it unnecessary to give them any consideration, in fact we feel that the questions heretofore discussed based on the pleadings, the evidence, and the merits of the case are decisive of the rights of the parties to this controversy, and finding that there is evidence sufficient to sustain the findings of the referee and the judgment of the trial court, we therefore find that the judgment should be, and the same is hereby affirmed.

By the Court: It is so ordered.

Note.—See 21 C. J. p. 1207, §207; p. 1219, §223.