MERTZ v. OWEN et al.
SAME v. ENGLISH et al.

No. 30081. April 28, 1942.

Rehearing Denied June 2, 1942.

Application for Leave to File Second Petition for Rehearing Denied June 23, 1942.

*126 P. 2d 720.*

---

Malcolm E. Rosser, Malcolm E. Rosser, Jr., Jno. W. Porter, and Jno. W. Porter, Jr., all of Muskogee, for plaintiff in error.

R. M. Mountcastle, of Muskogee, for defendant in error Carl K. Bates, administrator.

W. F. Rampendahl and Chal Wheeler, both of Muskogee, for defendants in error Frederick S. English and Mary Severs Owen.

George W. Leopold, J. F. Brett, and Elbert Hinds, all of Muskogee, for defendant in error Muskogee Welfare Association.

Linebaugh & Davis, and Banker & Bonds, all of Muskogee, for defendant in error Dorothy Evalyn English.

BAYLESS, J. I. H. Mertz appeals from a judgment of the district court of Muskogee county, rendered in favor of Frederick S. English et al. He presents and argues two general propositions, but since the judgments from which he appeals were rendered in cause No. 27696 and in cause No. 27960, in the district court of Muskogee county, with which actions several other actions were consolidated, and since the facts out of which this litigation arose cover a long period of time and comprise four volumes of record, and since many of the facts and contentions made in all of the cases throw light on the two propositions argued, we think it best to make at once a chronological statement of the case.

Prior to the year 1916, Mrs. Mary Severs Owen, Mrs. A. S. English, and Mrs. Annie Cook, sisters and coheirs of Frederick Severs, deceased, owned severally and jointly certain property in Muskogee and vicinity, parts of which are involved in this action. The property involved is that which was owned by Mrs. English and Mrs. Cook during their respective lives. Sometime before June 1, 1916, Mrs. English and Mrs. Cook became widows and were left with the management of their property. During the lifetimes of their respective husbands Mertz had been employed by one or both of the husbands in connection with the management of the real estate involved. During the month of June, 1916, Mertz was employed by both Mrs. English and Mrs. Cook to assist them in the management of their respective properties, for which service he was to be paid a monthly salary. This arrangement continued as to both of these women until each died. Mrs. English died in 1923 and left a will wherein she bequeathed to Mertz a sum of money and, after making certain other bequests, left the remainder of her property to Frederick S., sometimes called Fred English, her son. Fred English administered upon the estate of his mother and apparently completed this task early in 1926, for it is stated in the record that in March, 1926, he took charge, in his own personal right, of his

property, which consisted of what he inherited from his mother. At this point we wish to state that each of the sisters owned one-third of the property known as the Severs Hotel. Mrs. English willed her one-third in this hotel to Mrs. Cook, and sometime in 1925 Mrs. Cook purchased the share of Mrs. Owen, and from that time forward owned the hotel property. November 1, 1927, Fred English borrowed $22,000 from Mertz, giving his note therefor secured by a mortgage upon his property. April 6, 1928, Fred English's wife Evalyn sued him for a divorce and for a settlement of property rights and for the custody of their minor child, Dorothy Evalyn English, one of the defendants herein. Mertz assisted Fred English in the adjustment and settlement of the property rights involved in this divorce action, and in so doing loaned Fred an additional $56,-000, through an arrangement with Mrs. Cook, which will be discussed at greater length later. At that time Fred English conveyed all of his property to Mrs. Cook, and May 19, 1928, Mrs. Cook conveyed the property which Fred had conveyed to her to Mertz in trust to manage for the benefit of Fred English. Mertz assumed this responsibility and acted as trustee for Fred English with respect to this property until May 1, 1934. At that time Mertz expressed to Mrs. Cook dissatisfaction about the state of Fred's indebtedness to Mertz and the state of the affairs with respect to the trust property and insisted that other arrangements be made. At that time he reconveyed this trust property to Mrs. Cook and Mrs. Cook gave him her note, secured by a mortgage upon certain of her property, for the sum of $96,000 to cover the amount due upon the $22,000 and $56,000 loans theretofore made to Fred English. From that time on Mertz handled this property for Mrs. Cook as he did her other property, and at her directions made monthly payments to Fred English. October 25, 1937, Mrs. Cook died. She left a will wherein she set aside the bulk of her estate in trust for the benefit of certain named persons including Frederick S. English and his daughter, Dorothy Evalyn English, who are the only survivors of the beneficiaries named in the trust provisions of said will. By the terms of this will, Mertz was named executor thereof, and named trustee of the estate setup. November 16, 1937, Mrs. Cook's will was admitted to probate in the county court of Muskogee county and Mertz was appointed executor. The transcript of the proceedings in the county court is not before us and we cannot make a detailed statement of what transpired thereafter further than we are generally informed by the pleadings and evidence in the trial below and the briefs of the parties here. It is sufficient to say that the parties became dissatisfied with Mertz's management of the property as executor and did not desire that he become trustee, and applied to the county court to have him removed. It appears that the county court entered an order removing Mertz as executor and appointing Carl K. Bates administrator with will annexed, and removing Mertz as trustee. Several appeals were taken from the order so made, and were lodged in the district court of Muskogee county under several numbers, but these appeals seem to have been consolidated. It appears that Mertz did not appeal from the order removing him as executor, but did appeal from the order of the county court removing him as trustee. However, the appeal pending in the district court, No. 27689, was consolidated with actions Nos. 27709, 27710, 27759, and 27815. We are not certain that all of the issues involved in those actions are pertinent to a discussion of the issues presented in this appeal; and if any are, they are brought into the issues in this case by the various orders of consolidation made in the court below.

November 25, 1938, after the several appeals were lodged in the district court, Dorothy Evalyn English, a minor, by her legal guardian, Evalyn English, filed an action No. 27696 in the district court of Muskogee county against I. H. Mertz and Carl K. Bates, as administrator with will annexed of the estate of Annie S. Cook, deceased. It appears from the petition that the plaintiff

sought judgment in the following matters: (1) To have the will of Annie S. Cook setting up the trust construed and approved and the beneficiaries thereof named; (2) to have determined the fact that three of the five named beneficiaries of the income for their lives are dead, and only Frederick S. English and Dorothy Evalyn English survive to take the income of the trust for their lives; (3) to have decreed to be void and unenforceable those trust provisions relating to the appointment and service of Mertz as trustee; and (4) to have Frederick S. English and Mrs. Owen decreed to be the residuary legatees. Subsequently, certain other actions pending in the district court, the exact nature of which is not explained to us, were consolidated with this action, and were tried, and an order made therein disposing of certain issues that are not now before us, and leaving pending or undisposed of certain issues that become involved in action No. 27960 by an order of consolidation and are covered by the contentions made herein.

June 22, 1939, Frederick S. English filed three actions in the district court of Muskogee county, Okla., numbered 27960, 27961, and 27962. Thereafter, an order was made consolidating these three actions and action No. 27696 under No. 27960 for the purpose of trial. However, it is necessary before going further to state the issues raised by Fred in the three actions which he filed.

In action No. 27960 the following were named as parties defendant: Carl K. Bates, administrator with will annexed of the estate of Annie S. Cook, deceased; Dorothy Evalyn English, a minor, and Evalyn English, her mother and guardian; Muskogee Welfare Association, a corporation, and I. H. Mertz. Briefly, the purpose of this action was to have determined Fred's contention that the two deeds which he executed in favor of his aunt, Mrs. Cook, in 1928 were not absolute conveyances of the property therein described to her, but the conveyances by Fred to her were for the purpose of having held in trust for him the property therein described;

and to have determined that he was the owner of the legal as well as equitable title to this property, and to have this property stricken from the inventory and appraisement of the estate of Annie S. Cook, deceased, and to have his title thereto quieted.

In action No. 27961, I. H. Mertz was named defendant and the relief which Fred sought against him was an accounting with respect to the property which Mrs. Cook conveyed to Mertz in trust for Fred in 1928. The allegations of the petition are such as to show that Fred did not recognize the fact of the reconveyance of this property by Mertz to Mrs. Cook in 1934; and the period of time for which the accounting is sought reaches from 1928 to November 23, 1938.

In action No. 27962, I. H. Mertz is the only defendant, and in that action Fred seeks to have canceled the note and mortgage given by Mrs. Cook to Mertz. Mertz filed an answer denying the allegations made by Fred and filed a cross-petition wherein he set up the history of the matter that culminated in the execution and delivery to him of the $96,000 note and mortgage and asked to have them decreed valid for foreclosure. Fred filed a response to the cross-petition of Mertz wherein he denied the authority of Mrs. Cook to execute the mortgage on the property, and claimed title thereto himself, and set out various acts of mismanagement on the part of Mertz in his service as trustee resulting in damages to Fred, and, in addition to seeking the cancellation of the note and mortgage, asked a money judgment against Mertz for the damages alleged.

Appropriate pleadings were filed by the various parties respecting the issues raised in the several actions, and while we do not deem it necessary to attempt to summarize these pleadings, we do think it advisable to state in a brief way the positions of the respective parties in order that it may appear how their respective positions coincided with and differed from the positions of the other parties at the time of the trial.

In addition to the relief sought in actions Nos. 27960, 27961, and 27962 herein before outlined, Fred English was joined in interest with his daughter, Dorothy Evalyn English, and his aunt, Mrs. Owen, in an endeavor to have the will of Mrs. Cook construed and the trust set up with respect, insofar as he personally was concerned, to the property owned by Mrs. Cook, at the time of her death, which had never been his property.

Mrs. Owen filed a pleading in No. 29960 wherein she cast her lot with the contentions made by Fred in actions Nos. 27960, 27961, and 27962, and in addition to this it appears in No. 27696 she joined with Fred in an endeavor to have themselves declared residuary legatees of the trust estate set out in the will, and to this extent they were in opposition to the Muskogee Welfare Association.

Muskogee Welfare Association, a corporation, asked to have the will and its trust provisions enforced. This, of course, put it in opposition to those of the parties who were questioning residuary clauses of the trust provisions of the will.

All of the parties named to this point were joined in their efforts to have Mertz removed as executor of the will and trustee of the trust estate to be created and to surcharge his accounts and to defeat his note and mortgage.

Carl K. Bates, who was appointed administrator with will annexed after Mertz was removed as executor of the will of Mrs. Cook, filed a rather lengthy answer wherein he takes a position generally opposed by Mertz by asking that he be required to account, that he be assessed damages for his mishandling and mismanagement of the property of Mrs. Cook, and that he be denied any relief on his answer and cross-petition; and Bates takes a position of opposition to the claims of Fred English with respect to the property which Fred conveyed to his aunt, but asked if the court agreed with Fred's contentions that some adjustment be made with respect

to the money advanced to Fred by Mrs. Cook and with respect to the note and mortgage held by Mertz.

Dorothy Evalyn English, a minor, by her guardian, seeks to have the will established and the trust provisions therein established but administered by someone other than Mertz; and takes a position in opposition to the contentions of her father, Fred English, with respect to the property which he conveyed to Mrs. Cook and now seeks to recover.

After various preliminary steps had been taken, this matter came on for hearing in November, 1939, and at that time the parties had filed a stipulation with respect to many of the facts hereinbefore stated relating to the execution of the various instruments pleaded by the parties but not affecting the issues of law which the parties make with respect to the effect of these instruments. The trial of the matter was carried on from time to time and finally closed and set for April 27, 1940, for the rendering of judgment, pending which time the parties were to file briefs.

We find two journal entries of judgment dated April 27, 1940, one covering certain issues involved in action No. 27696 and related actions and the other covering the issues involved in actions Nos. 27960, 27961, 27962, and related actions. The journal entry in No. 27696 covered the issues wherein the will and the trust provisions were construed, and determined who were the beneficiaries and the residuary legatees or beneficiaries, removed I. H. Mertz as trustee and provided for his successor. Mertz has appealed from that part of the judgment which removed him as trustee. Frederick S. English, Dorothy Evalyn, a minor by her legal guardian, Evalyn English, and Mary Severs Owen appealed from that part of the judgment relating to the appointment of Carl K. Bates as successor trustee. However, since this appeal was filed and the issues were fully briefed some of the parties cross-appealing on the issue of Bates' selection and appointment have dismissed, but the issue is left as to certain others. In addition to Mertz's

appeal we have also this issue on cross-appeal, and we will consider such issue when we have disposed of Mertz's contention with respect to the error alleged in the order removing him as trustee. The journal entry of judgment entered in No. 27960 covered the issues relating to the accounting which the parties sought from Mertz, to the relief which Mertz sought on his note and mortgage, to the relief which Frederick S. English sought with respect to the real estate he conveyed to Mrs. Cook, and to the action of the county court of Muskogee county allowing the claim of Mertz based on the note and mortgage against the estate of Mrs. Cook. Mertz is the only party who appealed from the issues covered in this journal entry of judgment, the other parties acquiescing therein.

We are therefore at the point mentioned in the beginning of this opinion where we are to take up the consideration of the two general contentions of Mertz: (1) It was error to remove him as trustee and surcharge him; and (2) it was error to deny him relief on his note and mortgage. In discussing these two general propositions, Mertz has argued six points and these points have been answered by briefs filed in behalf of Bates as successor trustee and administrator, Frederick S. English, and Muskogee Welfare Association.

We will consider first the complaint with respect to the removal of Mertz as trustee. It must be borne in mind that the trusteeship from which he was removed was that which came into existence following the death of Mrs. Cook and by virtue of the provisions of her will. Among the reasons advanced by the parties for asking the removal of Mertz as trustee are these: (1) Mismanagement, some of the parties charging bad faith as an element thereof; (2) antagonistic interests of the trustee and the beneficiaries; (3) hostility on the part of the trustee toward some of the beneficiaries; and (4) failure to keep proper records and to make reports. The reasons assigned by the trial court for ordering the removal of Mertz were that he was incompetent and unfit as charged by the parties and as established by the proof introduced by them. We take these reasons assigned for removal as covering the grounds advanced by the parties for removal.

All of the authorities recognize that courts have the power to remove a trustee for cause. Bogert, Trusts and Trustees, vol. 3, p. 1650, § 519; 65 C. J. p. 614, § 445; and 26 R. C. L. p. 1276, § 126. While all of the authorities agree in recognizing the power of courts to remove trustees, these same authorities are quick to point out that no trustee should be removed except upon the strongest showing with respect to the charges made and only for the purpose of preserving or protecting the trust estate from loss or serious harm.

The authorities above cited generally agree upon the grounds for the removal of a trustee, and among the several grounds generally agreed upon are those urged by the parties who sought the removal of Mertz as trustee. The only decision by this court that has been cited dealing with the power of a court to remove a trustee and the ground therefor is the case of Cameron v. White, 128 Okla. 251, 262 P. 664, wherein it was held that when a trustee becomes interested in the subject of the trust estate to the extent that his interest is antagonistic to that of the beneficiaries, he should be removed.

We have examined the evidence in this case introduced by the parties in support for grounds for removing the trustee and Mertz's evidence in explanation of his conduct and in opposition to the efforts to remove him, and we are of the opinion that there is ample competent evidence to justify the order of the court removing Mertz as trustee. We do not think the assertions of bad faith in connection with the charge of mismanagement are supported by the evidence. We are of the opinion that the evidence with respect to the judgment exercised by Mertz in the handling of this property for Mrs. Cook in her lifetime, which was consistent with his conduct in handling it as trustee after her

death, is such as to wholly justify the beneficiaries of the estate in complaining and insisting that such a course of management be ended. In addition to this, once the claim which Mertz had against the estate itself for the payment of his note was contested by any of the parties, it put him in a position of occupying an antagonistic interest and justified his removal. There is evidence in the record of open hostility on the part of Mertz toward some of the beneficiaries and this was such as to justify this beneficiary in asking his removal as trustee. The evidence with respect to the reports which Mertz made might perhaps justify a complaint that they were not full enough when the size of the estate is considered, and when the customary methods of keeping accounts and records with respect to estates of that size are considered. Any charge that the accounts failed to reflect the true income failed wholly of support. Therefore, we are of the opinion that the order removing Mertz as trustee must be affirmed.

We have considered the terms of Mrs. Cook's will respecting the powers of nomination of a successor trustee, and the contentions of the parties with respect to the selection and appointment of Bates made below and here, and the record before us, and are of the opinion that the action of the trial court in selecting and appointing Bates as trustee to succeed Mertz is proper and correct.

We come now to that part of the case which deals with the subject of the surcharge against Mertz for the damages caused to the trust estate and the beneficiaries thereof growing out of his course of management of the property for Mrs. Cook in her lifetime and as executor after her death, and with the claim of Mertz based on his note and mortgage. These are separate matters, but we are forced to consider them in relation to each other because of the judgment rendered by the trial court. The trial court found that as a result of the mismanagement, dereliction of duty, negligence, and failure to keep proper accounts, Mertz had "thereby damaged said estate and caused loss thereto in an amount in excess of all sums alleged by him to be due upon and by reason of the note alleged to have been executed by Annie S. Cook in the principal sum of $96,114 with interest and attorney's fees," and ordered that Mertz be surcharged in that amount; and followed this with a further finding and order upon the issues presented by the several parties for an accounting and surcharge against Mertz, that such surcharge should be limited to the amount necessary to bring about the cancellation of the note and mortgage held by Mertz. We intend to consider first the matter of the surcharge.

An approach to this aspect of the case necessitates a consideration and determination of the legal status that existed between Mertz and Mrs. Cook during her lifetime; and a consideration of the legal status between Mertz and Fred English from 1928 until 1934, when Mertz was acting under the deed of trust from Mrs. English; and a consideration of the legal status between Mertz and Fred English from May 1, 1934, until Mrs. Cook's death, and between Mertz and Fred English et al. from the date of Mrs. Cook's death and the admission of her will to probate.

Those opposed to Mertz have taken the position at all times that Mertz was trustee for Mrs. Cook in her lifetime as well as for her estate after her death, seemingly making no difference in their view of the legal status which he actually occupied during her lifetime and after her death. Also, they seem to contend throughout this appeal that Mrs. Cook was trustee for Fred English. The trial court's judgment was to the contrary and they did not appeal. There is no legal basis for such argument.

The trial court found:

"that a trust relationship existed at all times involved in said several matters as between the said I. H. Mertz and the said Annie S. Cook during her lifetime, and between the said I. H. Mertz and the estate of Annie S. Cook, deceased, after her death."

84

There was no other finding explaining this "trust relationship."

We think the use of the words "trust relationship" by the court is significant but is not precise. There was never created an express trust or any other step taken to appoint Mertz trustee, or to vest him with title to Mrs. Cook's property as trustee, for her, that is, naming her beneficiary of an estate in Mertz in trust for her. The evidence shows that he was at all times the hired agent of Mrs. Cook, paid a monthly salary, and entirely and absolutely and unconditionally subject to her orders. At the inception of their relation as principal and agent in 1916, he owed her the duty, in all of its aspects, that any agent owes the principal. As time passed and she came to regard his advice more highly, and as she increased the importance of his duties, and as she gradually increased her reliance on him to the highest degree, we think the duty he owed her increased in a commensurate degree. In calling him her hired agent we are not underestimating the nature or extent of the fiduciary position he occupied at any and all periods. We conclude that a "trust relationship" did exist, as found by the trial court, but the difference between a trustee and agent must also be kept in mind. One cannot read the record before us without coming to the conclusion that Mertz possessed the confidence of Annie S. Cook to the highest degree and that she relied upon him in the management of these properties to the virtual exclusion of initiative therein on her part. Without in any wise undertaking to minimize the trust relationship that existed between this principal and her agent, we cannot recognize that Mertz was trustee for Annie S. Cook in her lifetime in the sense that he was trustee for the estate she created in her will after her death.

In the case of Riedell v. Stuart, 151 Okla. 266, 2 P. 2d 929, we pointed out the difference between an agent and a trustee. Adopting the language of the Supreme Court of the United States in the case of Taylor v. Davis, 110 U. S. 330, 4 S. Ct. 147, 29 L. Ed. 163, we said:

"A trustee is not an agent. An agent represents and acts for his principal, . . . . A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts, and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal."

This is a statement of the general rule. 2 C. J. S. 1034, § 2 (k), and Words and Phrases (Perm. Ed.) vol. 2, p. 789. In Bogert, Trust and Trustees, vol. 1, § 15, p. 50, it is said that agency is formed with the thought of constant supervision and control by the principal. It is pointed out that where a donor in an instrument, attempting to set up a trust estate in a trustee for the benefit of another, so words the instrument as to retain himself full control and domination over the property, he does no more than appoint the purported trustee his agent. Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N. W. 829. We think that even a casual consideration of the rules of law just quoted as applied to the evidence in the record suffices to demonstrate that Mertz was agent for Mrs. Annie S. Cook during her lifetime, that he never at any time had any title to any of her property (except as to the property described in the trust deed for Fred English), and there was never a moment during this period of time that Mertz was not obliged to implicitly obey any order communicated to him by Annie S. Cook. He was obliged by the terms and implications of the contract they entered into to remain constantly subject to her supervision and control. Whatever he did for her was her own act in the eyes of the law as fully as if she had taken the step on her own initiative and conscious responsibility.

With respect to the parties to this appeal other than Fred English, the finding of the court quoted above touching upon the trust relationship placed the beginning of Mertz's responsibility to

them as trustee at the date of the death of Annie S. Cook, and did not adjudge or find that he was trustee to these parties prior thereto. In this respect the trial court was correct. Whatever legal relationship existed between Mertz and these parties arose at the death of Annie S. Cook and by virtue of the provisions of her will.

With respect to Fred S. English the court found that:

"The trust estate created by the conveyance of said property, which had previously been the property of Frederick S. English, from Annie S. Cook to I. H. Mertz as trustee was properly and legally terminated on or about May 1, 1934, . . ."

Fred English has not appealed from the judgment insofar as it determined adversely to him the issues raised by him, and the finding just quoted and the judgment of the court thereon are conclusive. We are of the opinion that Fred English was not given a judgment in this action against Mertz with respect to any claim of damage suffered by Fred English as the result of the management of the trust estate consisting of the property Fred English conveyed to his aunt, Mrs. Cook, during the existence of that trusteeship. Any judgment in the nature of a surcharge for damage suffered which Fred English can claim by virtue of the judgment rendered April 27, 1940, is to be found in that part of the journal entry of judgment in action No. 27960 wherein he and others are given a judgment against Mertz equal to the amount claimed by Mertz on his note secured by the mortgage. Such a judgment was rendered in favor of all of the parties as the beneficiaries of the will of Mrs. Annie S. Cook, and Fred English has no judgment arising out of a claim with respect to what had been his individual property or the trust estate in his favor that existed from 1928 to 1934.

Before proceeding further, we think it well to emphasize what we have heretofore said with respect to what we consider the two periods of time involved. We consider the period of time commencing with Mertz's employment and terminating with the death of Mrs. Cook to be one period of time wherein Mertz was wholly responsible to her and to no one else; and the period of time commencing with the death of Mrs. Cook and the admission of her will to probate and terminating with the final removal of Mertz both as executor and trustee as another period of time when he was responsible to someone else.

In this view of the matter it, of course, becomes apparent that the interest of Fred English and his daughter, Dorothy Evalyn English, as the life beneficiaries of the trust estate provided by Mrs. Cook's will, came into existence upon the death of Mrs. Cook and the admission of her will to probate, and with respect to that interest they are equal. The interests of the other beneficiaries attached at the same time, but were postponed to the life income estate of Fred English and his daughter. It is, of course, obvious that Bates, as administrator with will annexed, had no interest in the matter whatever until Mertz was removed as executor and Bates named to succeed him as administrator with will annexed, and still later when Mertz was removed as trustee and Bates appointed to succeed him. The parties make no issue upon who should maintain the action with respect to the claim that Mrs. Cook's estate may have against Mertz arising out of his management of her properties during her lifetime as between Bates, as administrator and trustee, on the one hand, and the life and residuary legatees of the estate, on the other hand, and since they are all parties hereto, we think there is no occasion to discuss this aspect of the matter.

We think it is clear that when Bates was appointed administrator with will annexed to succeed Mertz as executor he had certain rights against Mertz which he was duty bound to enforce. Among those rights were (1) to require Mertz to turn over to him all property that came into his hands as executor; (2) to require Mertz to account to him for all money that he had as agent for

Mrs. Cook and as executor of her will; (3) to sue Mertz for any property or money unaccounted for; and (4) to maintain any action that Mrs. Cook had against Mertz for damages done to her in the course of his management of her property.

We do not understand that any contention is made that Mertz failed to turn over to Bates all of the property he had in his possession at the time he was removed as executor, except a claim against the United Cigar Stores Company to be discussed later. With respect to the income which came into Mertz's hands while he was acting as agent for Mrs. Cook in her lifetime as well as that which came into his hands as executor, there is some contention that Mertz has not fully accounted. The parties differ in their views on this, some charging him with bad faith and failure to disclose all of the money that came into his hands, while others go no further than joining in the contention that his records were not full and complete, because of which it cannot be certain whether he has fully accounted. It appears from the record that Mertz handled more than a million dollars in the course of his connection with these properties and that the records which he kept with respect to this income were of the simplest type. These records consisted simply of bank deposit slips showing the deposits of the money and a list of the checks drawn against this money. It appears that once a month he furnished Mrs. Cook with a list of these items, showing the balance to her account in the bank. The contention that Mertz did not deposit or otherwise account to Mrs. Cook for all of the money that came into his possession fails for want of proof. The argument is advanced that the records which he kept were of such a character that if he had desired to withhold money and had failed to deposit some money received by him, his records would not so show. This assumption is true, but we must observe that it is likewise true with respect to the most complete and technical type of records that could have been kept. It makes no difference what

kind of records Mertz kept, if he did not make the initial entry showing the receipt of money by him. Records can only disclose what is entered thereon, whether they be simple or complex. Mertz accounted to Mrs. Cook periodically in her lifetime and to the court since her death, and, as stated above, there is nothing in the record to show that he has not recorded each item of income and expenditure, and we think the showing he has made is amply sufficient to shift the burden of proof to the other side. His opponents have not produced such proof, but rely wholly on arguments based on suppositions.

This brings us to a discussion of the issue of law and the evidence relating to the surcharge against Mertz in the nature of damages done to Mrs. Cook by the type and course of his service to her. There is no occasion to discuss the duties owing by an agent to his principal, for these are among the elementary principles of law. With respect to the contention that Mertz's method of handling this property was unreasonable, was contrary to custom and good judgment, and was of a kind that produced far less revenue for Mrs. Cook and her estate than was reasonably to be expected, we must say that the evidence is ample to support such contention. There is no necessity to discuss the evidence in detail nor to take up the argument advanced by Mertz in extenuation of his judgment. There is in the record evidence of one or two instances that verge on bad faith on his part toward Mrs. Cook and her interests during her lifetime, but these instances are so few that we do not feel that they lend color or tone to the general motives that actuated Mertz throughout the years. Mertz argues, in support of his contention that the court erred in surcharging him with respect to those transactions that occurred in Mrs. Cook's lifetime, that claims based thereon are barred by laches and limitations. In Mertz's reply brief, in discussing these two points, Mertz indulges in argument that is based on estoppel. He likewise urges that if Mrs. Cook had a cause of action against him for mismanage-

ment or failure to do his full duty, it was not a cause of action that survived her death. We see no occasion to discuss this last contention, since we are convinced that his defense based upon laches, limitations, and estoppel is good. The record discloses conclusively that Mrs. Cook knew the description, the nature, and the extent of her property at all times. The evidence discloses that Mertz made a monthly report to her showing the income received and the expenditures made, and from this Mrs. Cook could not fail to realize that her property was not producing the income that reasonably could be expected therefrom. It is conclusively shown by this record that Mrs. Cook was active and had unlimited opportunities to see and observe that the property she owned was standing idle and was not producing revenue for her. The evidence of Mertz's opponents shows that this condition existed over a period of ten years. One of their witnesses testified that when Mertz refused to rent a piece of property, this person went to Mrs. Cook in an effort to rent from her directly, and when she referred this person to Mertz, she was advised that Mertz had been consulted, and Mertz had refused to rent to the person; whereupon Mrs. Cook terminated the conversation by saying in effect that this was satisfactory to her.

We think it cannot be doubted that Mrs. Cook knew what Mertz was doing. Since he was acting as her agent and, as we have said before, whatever he did was in the eyes of the law her act, we think the conclusion is inevitable that Mertz's method of handling this property and dealing with the people who desired to rent it met with the full approval of Mrs. Cook; and if this be allowed to be a debatable point, the record does not show that Mrs. Cook ever at any time objected to Mertz's methods, or gave him directions to do otherwise, or took any step to cause him to suppose that she desired him to change his course of management. If complete affirmative approval of his conduct cannot be seen from her acts and conduct, at least her silence amounted to acqui-

escence for such a period of time as to have precluded her from maintaining a cause of action against Mertz in her lifetime, and likewise precludes those who claim under her. We have defined "acquiescence" in Lewis v. Smith, 187 Okla. 404, 103 P. 2d 512, as being:

"Quiescence under such circumstances that assent may be reasonably inferred from it."

See Words and Phrases (Perm. Ed.) vol. 36, p. 122, and 1 C. J. S. 916, notes 40 and 41. In Miller v. Ashley, 127 Ore. 215, 271 P. 596, it is said that long acquiescence will amount to ratification. In Penn. Trust Co. v. Billman, 61 Fed. 2d 382, it is said that where a principal expressly or by implication led an agent to believe that a particular method of accounting would be satisfactory, the principal cannot thereafter charge bad faith or neglect to keep accounts with the strictness that otherwise might be required. In the case of Union Coal Co. v. Dawley, 124 Okla. 82, 254 P. 73, we said that where a producing coal company gave its sales agent certain specified prices to govern the sale of coal, but for years accepted orders sent in by this agent for sales at lesser prices, it could not years later change its mind and seek to charge the agent with the difference between the prices for which the coal sold and the authorized price.

We think it simply stands to reason that when a principal knows or should know that the acts of his agent are contrary to his orders or are contrary to the duty which the agent owes to the principal, or are contrary to good judgment and good management, it is the duty of the principal to speak at once and to exercise the control and authority that are his; and that a failure so to do for a period of years amounts to acquiescence or ratification that will support a plea of laches and estoppel and the statute of limitations. Therefore, we are of the opinion that any cause of action which Mrs. Cook may have had against Mertz was long since lost by reason of her acquiescence in his course of conduct which undoubtedly amounted to ratification. She

might have terminated his services because thereof up to the date of her death, but she had lost the cause of action for damages. Therefore, the judgment in this case surcharging Mertz for any damage that it is alleged that Mrs. Cook suffered in her lifetime as a result of his alleged mismanagement of her estate is erroneous and must be vacated.

Remembering that Mrs. Cook died testate and named Mertz executor of her will and trustee of the estate which she created, and remembering that her acquiescence in or ratification of his conduct in the management of her affairs in her lifetime was sufficient justification for Mertz to suppose she was satisfied for such to continue after her death, we think there is no occasion to charge Mertz with any part of the damages alleged to have occurred to the trust estate through his mismanagement of its income-producing properties up to the time that the beneficiaries became dissatisfied therewith and had him removed. It appears from this record that the beneficiaries acted with reasonable dispatch when they became aware of the type of management and discretion Mertz was exercising toward the trust estate from which they were to derive the income. They procured Mertz's removal as executor as soon as was reasonably practicable and ended the course of conduct which they felt would result in damage to their interests. Therefore, insofar as the judgment of the court seeks to surcharge Mertz with damages alleged to have been suffered by the trust estate between the date of Mrs. Cook's death and his removal as executor, it is erroneous and must be vacated.

What we have said with respect to the surcharge against Mertz in the last two preceding paragraphs does not apply to the item of the claim against the United Cigar Stores Company. The record discloses that Mertz rented this property in 1920 for Mrs. Cook for a period of 20 years on a sliding, increasing scale of rental, commencing with $21,000 per year for the first period and rising to $27,000 per year for the last period. The United Cigar Stores Company occupied this property and paid rent on it until sometime in 1932, when it went into bankruptcy. From that time on the property seems to have been vacant and to have produced no revenue for Mrs. Cook through Mertz's management. Some correspondence was carried on by Mertz for Mrs. Cook with the trustee of the bankrupt estate, but it does not appear that Mertz or Mrs. Cook, either, ever sought legal advice on the matter. Mertz testified that he consulted with Mrs. Cook from time to time on this matter and that they decided to pay no attention to the bankruptcy court, but to wait until the termination of the lease term and to sue the tenant for the entire unpaid balance. He testified that later on, toward the end of Mrs. Cook's life, he received further communications from the trustee of the bankrupt estate, but owing to the state of Mrs. Cook's health, he did not consult her further on the matter. Somewhere during this period of time he filed a claim with the bankruptcy court on behalf of Mrs. Cook for about $192,000, the balance of rental due under the terms of the lease, and in July, 1937, he received advice from the bankruptcy court that $77,-242.24 had been allowed on this claim and was payable to Mrs. Cook partly in cash, partly in stocks, and partly in bonds of the new corporation. In connection with this information, instruction with respect to the payment thereof was requested. It does not appear that he acknowledged receipt of this information or gave any directions prior to the death of Mrs. Cook. In view of what we have said concerning his acts as agent of Mrs. Cook, it is doubtful whether up to the time of her death Mertz had failed to do anything with respect to this claim that would render him liable to her for having failed to fully perform the duty he owed to her. However, after Mrs. Cook's death and after his appointment as executor of her estate, he filed an inventory of her estate and omitted to list this claim as an asset of the estate. During the period of time that he acted as executor he

did nothing toward realizing on the offer made of money, stock, and bonds, and he seems to have wholly ignored the matter. In passing we might say that under congressional legislation and the decision of the Supreme Court of the United States, Kuehner v. Irving Trust Co., 229 U. S. 445, 57 S. Ct. 298, 81 L. Ed. 340, $77,242.24 was all that could be realized on this claim and there was no way that Mrs. Cook could have bettered her position during her lifetime, nor could Mertz have bettered the condition of the estate by obtaining an increase of this offer on the claim after her death. After Mertz's removal as executor, correspondence from the bankruptcy court came to the attention of Bates, and this being his first knowledge of the claim, he consulted Mertz about it, and it appears that Mertz took the letter and passed the matter over with some irrelevant explanation to Bates. Later, Bates instituted an inquiry on the matter, and when he learned the status of the claim, he immediately accepted the offer made and got into his possession the money, $19,310.56, and stocks and bonds for the difference, approximately $57,921.68, theretofore offered to Mrs. Cook in her lifetime and to Mertz after her death. Mertz gave several explanations of his method of handling this claim as executor, but none of these are entirely satisfactory, standing alone, and some of his explanations are directly inconsistent with other explanations. Bates deemed these stocks and bonds to be of a speculative character and of a type that did not justify their retention as assets of an estate of the character he was administering. He thereupon applied to the court for authority to dispose of the securities, and upon such authority being granted, disposed of the stocks and bonds for the sum of $28,293.11. Evidence in the record indicates that the highest market value of these stocks between date the offer was first communicated to Mertz, in 1937, after he became executor, and the date they were sold in 1939 was approximately $52,207. It is sought to charge Mertz with this loss in value on the theory that had he acted with reasonable foresight, he would have accepted these speculative securities and disposed of them promptly, and would thus have avoided the loss to the estate in the depreciation in value of these securities. It is charged this loss was about $29,000. When this contention is viewed in the light of the gradual decrease in value of these securities, it appears to have merit. As we have said, Mertz has not offered a satisfactory explanation of his handling of this item, and it is clearly demonstrated that these securities depreciated greatly in value. We are, therefore, of the opinion that the judgment surcharging Mertz is correct insofar as it relates to this item. It has been noticed that the trial court did not make specific findings with respect to the details or amount of the surcharge. The evidence is all in the record, and, as pointed out above, shows that there was a loss of $23,913.89. This is the difference between the market value of these securities when Mertz should have acted and their sale price. We think, therefore, that the amount of this surcharge should be $23,913.89.

This brings us, then, to the matter of the note and mortgage which Mertz seeks to establish and foreclose. As before pointed out, a claim based upon this note and mortgage was presented in the administration of Mrs. Cook's estate and was allowed, and we suppose there would have been no occasion to foreclose this mortgage had not Fred English instituted the suit which he did, which was later joined by all of the others opposed to Mertz, wherein it was sought to defeat his claim in its entirety. We think Mertz was justified in proceeding as he has with the foreclosure of the mortgage.

Several grounds of defense or reasons for defeating this note and mortgage are advanced. It is urged in the briefs of the defendants in error that Mertz may not have advanced the $56,000 which was expended in behalf of Fred English in settlement of his divorce action. There is no evidence to support this argument. It is suggested that, con-

sidering the evidence of the extent of Mertz's possessions when he became employed by Mrs. Cook and Mrs. English in 1916, and considering his earnings over the period of years, it is not reasonable to suppose that Mertz could have had enough money to lend Mrs. Cook and Fred the total of $78,000. Mertz admitted that he did not have that much money and particularly at the time the $56,000 loan was made, but he testified that he borrowed from his son funds that went to make up the total. Evidence was then introduced regarding the earnings of his son for the purpose of showing that the son was not likely to have had sufficient money to lend his father in this matter. The father and son testified that it was their money and they had accumulated it, and there is no fact in the record to contradict their testimony. Defendants in error argue that, considering the resources of the father and son at the inception of this period, and considering their earnings and acquisitions thereafter, it is not likely that they would have had such a sum of money. We must concede that the accumulation of these sums of money by the father and son evinces a course of frugality of the highest degree. We do not think it impossible that they may have accumulated this sum of money as they testified, and if they have done so, it seems to us that defendants in error should present something more than argument to deprive them of the fruits of their frugality. Of course, defendants in error argue strenuously in support of this contention that the possession of this much money by Mertz tends to support the contention that he embezzled money from Mrs. Cook. We have said before that there is no evidence in this record of his having mishandled any of her money that came into his possession, and we reiterate that the efforts of the defendants in error to defeat this note and mortgage on this point should have some substantial evidence to support it. The defendants in error point out that the money which Mertz borrowed for the purpose of lending to Fred English and later to Mrs. Cook was borrowed by him at 6 per cent and loaned to them at 8 per cent, and this act of profiting in the rate of interest at the expense of those whom he was supposed to serve as agent in a highly fiduciary character is inequitable and should not be enforced. Whatever may be the ethics involved in a matter of that kind, it is a transaction that was entered into by Fred English and Mrs. Cook on their own responsibility, and there is no evidence in this record that Mertz misled them with respect to this matter or coerced them. We are asked to condemn the matter simply because Mertz made 2 per cent interest with respect to that portion of the loan he made to them that represented money borrowed by him. In addition to contesting these points as a matter of evidence and on general principles, Mertz points out that Mrs. Cook later gave the $96,000 note in renewal of the balance due on the $22,000 note and the $56,000 note, and that the renewal of a note with knowledge of defenses, or under circumstances that would have enabled the maker of the instrument to have knowledge, constituted a waiver of any defense that may have existed with respect to the two earlier notes. Moran v. Security Bank & Trust Co., 181 Okla. 181, 72 P. 2d 814, and other Oklahoma cases.

In answer to Mertz's argument the defendants in error lay great stress upon the high character of the fiduciary relationship that existed between him and Mrs. Cook and urged that she had no knowledge of Mertz's derelictions, which are here urged as defenses to the note, and urged that because of her reliance on Mertz she was not likely to make any investigation to ascertain the facts with respect thereto. Again we think that these contentions are based on nothing more than argument and lack any basis of substantial evidence of misconduct that could have been discovered by Mrs. Cook had she investigated.

We are impressed with the fact that Fred English admitted he borrowed $22,000 from Mertz as early as 1927 when he and Mertz were at liberty to

deal with each other at arm's length, and on the freest conditions with respect to bargaining, and that Fred English and Mrs. Cook both accepted Mertz's offer to lend $56,000 for Fred's benefit in 1928 when it was necessary for Fred to finance the settlement of his property rights with his wife in connection with the divorce action. There is no evidence in the record to indicate that Fred English did not receive the full benefit from $78,000 in money advanced. Mrs. Cook knew and understood at all times all of the details of these transactions and knew all of the implications arising therefrom; and, with this conscious knowledge, combined the balance due on these obligations in one sum and gave her own note secured by a mortgage on her own property in settlement thereof. There is no reason in law or evidence for denying I. H. Mertz judgment on his note for the principal sum, interest, attorney's fees and costs as set out in his answer and cross-petition. This sum can be calculated and judgment entered thereon by the trial court upon the remand of this case and appropriate orders made for the enforcement thereof. Of course, the amount of Mertz's claim against the estate must be reduced in the amount of $23,913.89 set out in the surcharge allowed here.

The judgment of the trial court is affirmed insofar as it removed I. H. Mertz as trustee of the trust estate set up by the terms of the will of Mrs. Annie Cook, deceased; and is affirmed insofar as it selected and appointed Carl Bates as trustee to succeed I. H. Mertz; and is affirmed in so far only as it surcharged the accounts of I. H. Mertz, executor and trustee, on account of the United Cigar Stores claim in the sum of $23,913.89, with interest at 6 per cent from April 27, 1940; and is reversed insofar as it surcharged Mertz for any item other than the United Cigar Stores claim, and insofar as it denied I. H. Mertz relief upon the note and mortgage sued on, and the cause is remanded, with directions to take further proceedings not inconsistent with the views expressed herein.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, HURST, and DAVISON, JJ., concur. GIBSON and ARNOLD, JJ., disqualified and not participating.