Dona B. BROWN, Lois K. Brown, Glenn
M. Currie and Juanita Jann
Cunningham, Appellants,

v.

T. R. BATT, Appellee.

Nos. 54464, 54465.

Court of Appeals of Oklahoma,
Division No. 2.

June 16, 1981.

Released for Publication by Order of
Court of Appeals July 16, 1981.

Denver Meacham II, Meacham, Meacham
& Meacham, Clinton, for appellants.

Mark R. Wesner, Wesner, Wesner & Ra-
inbolt, Cordell, for appellee.

BOYDSTON, Judge.

This consolidated appeal arises from two
judgments in which the district court refus-
ed to remove trustee and denied judgment
for return of commissions charged by trus-
tee for sale of trust assets.

The testamentary trusts (herein designat-
ed the Smith Trust and Ray Trust) came

into being in 1964 and 1965 respectively. Dona B. Brown and Lois K. Brown are the primary beneficiaries of the trust estates. Glenn M. Currie (Currie) and Juanita Jann Cunningham (Cunningham) are the immediate contingent beneficiaries. All beneficiaries brought suit against T. R. Batt (Trustee) seeking his removal as trustee and further seeking to recover $3,045 he paid himself as a 7 percent "commission"[1] in connection with the sale of estate assets and $339 he paid himself as compensation from interest earned by certificates of deposits owned by the estate.[2]

The trial court refused to order Trustee's removal from the Ray Trust or require him to reimburse the estate for commissions and interests charged.

The court removed Trustee from Smith Trust and substituted a bank officer as trustee to pay out interest as it accrues in the certificates of deposit which are now the only assets of that trust. The Smith Trust had originally consisted of two commercial buildings which Trustee sold in 1978, investing the proceeds of sale in the certificates of deposit.

The Ray Trust, consisting of 370 acres of Washita County farmland and a commercial building in Cordell, Oklahoma, remains intact.

Four months after judgment had been rendered, Trustee's attorney made oral application for attorney fees for the trial. The court awarded him $1,500.

The issues raised on appeal are:

(1) Whether the court should have removed Trustee because of irreconcilable hostility between Trustee and beneficiaries;

(2) Whether Trustee is entitled to charge 7 percent commission for sale of trust assets; and

(3) Whether Trustee of estate having only passive investments is entitled to 10 percent of earned interest as commission.

I

The trust instruments are identical, naming Dona B. Brown and Lois K. Brown as primary beneficiaries and their children, Currie and Cunningham, as contingent beneficiaries. The trusts require Trustee to manage the estate property and pay the net income to primary beneficiaries in equal shares four times each year during their lifetimes and, upon the death of one, to pay the income to the survivor until her death. After the deaths of both primary beneficiaries, the trust income is to revert to Currie and Cunningham during their lifetimes. At their deaths, the corpus is to be paid to their heirs.

The trusts contain no provision for compensation of Trustee. Trustee's duties originally consisted of collecting rent for and repairing and maintaining two commercial buildings in Clinton, Oklahoma, one commercial building in Cordell, Oklahoma, and 370 acres of Washita County farmland. These managerial duties were reduced in 1978 when the commercial buildings in Clinton were sold and the proceeds deposited in two certificates of deposit with First National Bank of Cordell.

■ The record shows conclusively that a state of extreme hostility exists between beneficiaries and Trustee. This hostility has existed from the inception of the trust and has steadily escalated in intensity. Trustee testified the cause of hostility is arbitrary conduct and attitudes of beneficiaries. Beneficiaries testified Trustee refused to communicate with or account to them regarding the trust estates. He did furnish

1. The term "commission" was used by the parties throughout the trial and the briefs on appeal. The term is used synonymously with "compensation" as it is generally employed to denote the payment a trustee receives for his services.

2. The $339 represents 10 percent of the interest earned by certificates of deposit held by the trust. On advice of counsel, Trustee voluntarily ceased collecting this "commission" before trial.

an annual report and made distribution to them "when the money was in the account." On several occasions, the frustrated beneficiaries attempted to inquire directly with the bank regarding the status of the accounts, but Trustee had instructed the bank not to disclose any information to them. It is clear to us these parties are irreconcilably hostile toward one another. In fact, it appears this relationship has degenerated to the point that a seething rage exists between the parties that shows no possibility of abatement. We find no useful purpose to be served by the continuation of such a relationship.

In this case of equitable cognizance, it is the appeal court's duty to weigh the evidence and, unless there has clearly been an abuse of discretion, affirm the judgment of the trial court.[3]

In *Childers v. Breese*, 202 Okl. 377, 213 P.2d 565 (1949), the supreme court held that in some cases "deep-seated and irreconcilable hostility" are grounds for trustee's removal.[4]. We find this to be such a case.

Here, all potential beneficiaries who are identifiable have joined in strenuous objection to Trustee's continuation in that capacity. Under these circumstances we hold it is an abuse of discretion not to remove Trustee.

## II

In support of their contention that Trustee should be removed, beneficiaries claim Trustee should have cash rented the farm instead of crop renting. Testimony was offered cash rental would have produced annual income of $11,000, while crop rental only produced a maximum of $6,000 in income. They also complain Trustee was hired by the lessee after he leased the farm.

This arrangement, we believe, is fraught with potential for abuse and should be avoided. Such a business relationship is on its face suspicious and, from a fiduciary standpoint, intolerable. We further believe the inherent nature of crop rentals imprudently burdens the estate by assuming the inherent risks of farming. We are aware that in some years, under ideal weather conditions, the profits received from crop renting may exceed the income derived from cash renting. However, a trust estate should not be subjected to the same risks that the sturdy and perennially optimistic farmer traditionally assumes. A trustee is required to exercise reasonable care in his investments and avoid speculative investments due to the nature of his office.

◼ Under these circumstances, we hold, while it is not necessarily a breach of duty on the part of a trustee to prefer this type investment over the other, it appears in this case to be an imprudent and unnecessarily risky venture which, on its face, probably will not produce the highest, safest return on the investment.[5]

## III

Beneficiaries' complaint that Trustee improperly charged the estate a commission on the sale of the real estate is well taken.

◼ A trustee is not a real estate salesman who is automatically entitled to such a commission, nor is he permitted to arbitrarily seize assets of the estate. In this instance the evidence shows Trustee did not employ a realtor nor compare local sales to ascertain market value of the property prior to sale. All he did was communicate an unsolicited offer from a willing purchaser to beneficiaries, who eventually approved it.

---

3. *King v. Rainbow*, Okl., 515 P.2d 228 (1973).

4. *Childers* cites with approval 54 Am. Jur. Trusts § 132 (1945). Also see *Mertz v. Owen*, 191 Okl. 77, 126 P.2d 720 (1942) and *Pipkin v. Pipkin*, Okl., 393 P.2d 534 (1964).

5. The prudence of crop rental vis-a-vis cash rental, like all such trust investment decisions, is determined from the particular facts involved, i. e. prevailing custom, usage. In this case, cash rental appears to be clearly the favored choice.

Other than this, no extraordinary duties were performed by Trustee. His compensation prior to the sale was based on 10 percent of the income of the estate, an amount with which we do not find fault considering the size of the estate.

However, in charging the estate a 7 percent commission on the real estate sale, he in effect arbitrarily appropriated funds from the estate. If he had performed extraordinary duties in connection with the sale, he should have presented his claim for approval by the court at the time the court approved the sale of the real property or in these proceedings.

Most of the issues raised in this case resulted from the complete lack of communication between Trustee and beneficiaries. If a tolerable relationship had existed it would have been a simple matter to confer with beneficiaries as to both amount and propriety of the fee. Instead, the lack of communication resulted in a situation where inquiry from beneficiaries resulted in a response by Trustee of "it's none of your business."

### IV

■ Complaint is made that Trustee illegally charged the estate 10 percent of the passive income from the certificates of deposit. We find Trustee has established a pattern of charging 10 percent of the trust income since 1964 with no apparent objection. We find this percentage to be reasonable under the circumstances. Because of the small size of the estate, we draw no material distinction between income derived from interest and that received from the collection of rents. Both require a minimal exercise of investment discretion and time expenditure.

### V

■ We find the trial court had no authority to award attorney fees to Trustee's attorney four months after judgment. By so holding, we do not mean to imply the court, within its equitable powers, does not have the power to award Trustee his fees and expenses in a case where he is the prevailing party. We simply hold the motion and order for attorney fees should have been more timely pled and presented to the court.

We therefore order this case remanded to trial court with instructions that the court enter its order removing Trustee instanter and requiring Trustee to submit a final account for court approval. The court is further ordered to appoint a suitable successor trustee in accordance with the terms of the trust.

It is further ordered that judgment be rendered against Trustee in the amount of the commission charged on the sale of the real estate ($3,045) with interest from time of the realty sale equal to that paid on the certificates of deposit up to November 1, 1979, and thereafter at statutory rate on judgments. The order awarding $1,500 attorney fees is hereby vacated.

In all other respects the judgment of the trial court is affirmed.

BACON, P. J., and BRIGHTMIRE, J., concur.