1999 OK CIV APP 18

**FLEMING COMPANIES, INC., Appellant,**

v.

**TRU DISCOUNT FOODS, an Oklahoma limited partnership, d/b/a Super Center; John Phillip Mccarthy; and, Vivian H. Mccarthy, Appellees.**

**No. 90,073**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided Oct. 27, 1998.

Certiorari Denied Feb. 10, 1999.

Drew D. Webb, Sheryl N. Barr, McAfee & Taft, Oklahoma City, Oklahoma For Appellant

N. Kay Bridger–Riley, Vanessa Villines Bridger–Riley & Associates Tulsa, Oklahoma, Clark O. Brewster, Guy A. Fortney, Brewster Shallcross & De Angelis, Tulsa, Oklahoma For Appellees

## OPINION

STUBBLEFIELD, P.J.

¶1 On April 8, 1994, Plaintiff Fleming Companies, Inc., a wholesale food distributor, filed this action against Defendant Tru Discount Foods d/b/a Super Center (Tru Discount) for recovery on a promissory note and account and to foreclose a mortgage and security agreement given by Tru Discount in

connection with its operation of a supermarket supplied by Plaintiff. Plaintiff also sought judgment against Defendants John Phillip McCarthy and Vivian H. McCarthy, as guarantors of Tru Discount's indebtedness to Plaintiff. Plaintiff sought judgment in the amount of $599,761.63, less amounts received from the sale of collateral given for the note, plus interest, attorney fees and costs.

¶2 Defendants admitted the execution of the various instruments but maintained that the exhibits filed by Plaintiff were not comprehensive and that a vital part of the agreement had been omitted. They referenced a "Supply Agreement" executed on the same day as the loan agreement, which they claimed was incorporated into the other agreements between the parties. Defendants also charged that the loan agreement, promissory note and security agreement were unconscionable, executed under coercion and with no valid delivery of the instruments.

¶3 Defendants filed counterclaims against Plaintiff reciting claims for breach of the duty of good faith and fair dealing, breach of contract, tortious interference with contract, business defamation, fraud and conspiracy, as well as business compulsion and duress. They sought to estop Plaintiff's enforcement of the loan documents and recovery of actual and punitive damages.

¶4 Plaintiff filed a motion to stay, asking the court to submit the matter to arbitration. Citing Defendants' assertions regarding the critical nature of the supply agreement, Plaintiff contended that Defendants' counterclaims, under the terms of that agreement, must be submitted to arbitration.

¶5 Defendants opposed arbitration, maintaining that the arbitration clause of the supply agreement was invalid and unenforceable and applied only to the supply agreement.

They also asserted that Plaintiff had waived its right of arbitration by filing the civil action.

¶6 At the hearing on the motion, the trial court specifically noted that Defendants had not questioned the execution of the various documents until the action was filed and had not sought independent legal advice within a reasonable time after the purported forced execution of the documents. After further briefing, the trial court entered an order sustaining Plaintiff's motion and ordered the parties to proceed in arbitration.

¶7 We are told in the appellate briefs that the parties selected arbitrators and that considerable discovery took place. The arbitrators conducted two weeks of hearings and then allowed Defendants to conduct additional discovery. A third week of hearings was scheduled, when Defendants, seventeen months into the arbitration, filed an application for contempt citation in the district court. The application listed acts of Plaintiff that were allegedly abusive of the arbitration process[1] and claimed distinct bias of one of the three arbitrators. The application principally sought to have the stay dissolved and the case to proceed in the district court.

¶8 The trial court entered an ex parte order staying all arbitration proceedings. Lengthy and voluminous filings followed by both parties, including Defendants' motion seeking reconsideration of the stay order. Defendants claimed there was new evidence obtained since the hearing on their claims of economic duress, as defined by 15 O.S.1991 § 55, and in *Centric Corp. v. Morrison–Knudson Co.*, 1986 OK 83, 731 P.2d 411.[2]

¶9 After a hearing on Defendants' motion and filing of memoranda of law with regard to the issues, Defendants dismissed without prejudice all their counterclaims based on events that occurred after their execution of

1. Defendants alleged that Plaintiff "has engaged [in] a pattern of activity that evidences a knowing and willful attempt to use tactics of delay and surprise to defeat [Defendants'] meritorious claims."

2. Such a motion is tantamount to a motion for new trial based on newly discovered evidence, pursuant to 12 O.S.1991 § 655, which requires that a "petition" be filed within thirty days after

discovery of such evidence. However, the newly *discovered evidence* herein was nothing more than purported further evidence of coercion by Plaintiff. The trial court had been presented with evidence on that issue and had specifically found that "[a]fter the purported 'forced execution' of the documents, Defendants did not seek the advice of any attorney immediately or within a reasonable time thereafter."

the supply agreement as well as any and all disputes relating to that particular agreement. They then asserted that because the supply agreement was the only document containing an arbitration agreement, the dismissal of their counterclaims nullified any attempt to enforce the arbitration clause.

¶ 10 Finally, the trial court entered its order vacating the previous stay/arbitration order and directed that the action proceed in district court. Plaintiff appeals.[3]

■ ¶ 11 The order on appeal is not the grant or denial of a motion to compel arbitration but an order that vacated an earlier order directing arbitration. However, the standard of review of such an order still would be the same as for the grant or denial of a motion to compel arbitration—de novo, applying the same legal standard employed by the district court. *Towe, Hester & Erwin v. Kansas City Fire & Marine Ins. Co.*, 1997 OK CIV APP 58, ¶ 4, 947 P.2d 594, 596, quoting *Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 796 (10th Cir.1995); *see also Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987).

■ ¶ 12 Recognition and enforcement of arbitration agreements is an important consideration in the present appeal. The court in *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 19 (2d Cir. 1995), stated: "Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract." The court in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), noted that Congress had enacted the Federal Arbitration Act, 9 U.S.C. §§ 1–16, to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate. Furthermore, that legislation constitutes an expression of the strong federal policy of favoring arbitration as an alternative dispute resolution process. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.), *cert.*

*dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).

¶ 13 Section 2 of the Act provides that a "written provision in ... a contract evidencing a transaction ... to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (emphasis added).

■ ¶ 14 Plaintiff maintains that, pursuant to 9 U.S.C.A. § 3, the stay of district court litigation is mandatory as to all arbitrable issues and that the stay must remain in effect until all arbitrable issues have been resolved. Defendants contrarily maintain that the district court properly vacated its order compelling arbitration because their counterclaims and defenses based on the supply agreement—the contract in which the arbitration provision was set forth—had been dismissed. However, Defendants' partial dismissal was not filed until nearly two years after the trial court had entered its order of arbitration pursuant to 15 O.S.1991 § 803.

¶ 15 Title 12 O.S.1991 § 684, does allow Defendants to dismiss their claims at any time before trial is begun. However, the record herein shows: (1) There had been a hearing with evidence presented on the issue of whether the arbitration agreement was enforceable; (2) The trial court had found that the arbitration agreement was enforceable and had ordered arbitration; (3) The parties had participated in the ordered arbitration proceedings; and, (4) Hearings actually had been held in those proceedings. Under such circumstances, we conclude that Defendants could not avail themselves of the provisions of section 684 in a clear attempt to avoid continued arbitration.

■ ¶ 16 From our review of the agreements between these parties, we further conclude that Defendants' dismissal would still not render the conflict nonarbitrable. The court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1,

---

**3.** This interlocutory order is appealable by right pursuant to Oklahoma Supreme Court Rule 1.60(e), 12 O.S. Supp.1997, ch. 15, app. 1.

24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), stated that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Federal policy requires us to construe arbitration clauses as broadly as possible. *Threlkeld,* 923 F.2d at 250, quoting *S.A. Mineracao de Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984). Thus, arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

¶ 17 Herein, the loan agreement references the security agreement, promissory note, guaranty, financing statement, supply agreement, accounting agreement and lease. Further, the loan agreement provides that breach or termination of the supply agreement constitutes default under the loan agreement. The security agreement references the promissory note, loan agreement and "all Obligations" and covers the inventory and stock in trade, equipment, accounts, goods and general intangibles. The promissory note references the loan agreement, security agreement, and "any other agreement now or hereinafter securing payment of this note...." We find all of these various agreements between the parties to be inextricably intertwined and conclude that only a contorted construction would justify the extraction of the supply agreement from the totality of the agreement of the parties.

¶ 18 The real dispute herein concerns a trial court's power and authority to intervene in and halt previously ordered arbitration proceedings. Defendants cite *Metropolitan Property & Casualty Insurance Co. v. J.C. Penney Casualty Insurance Co.,* 780 F.Supp. 885, 894 (D.Conn.1991), quoting *Gaer Brothers, Inc. v. Mott,* 144 Conn. 303, 130 A.2d 804, 807 (1957), to support their proposition that a court has inherent power to intervene in arbitration proceedings. However, that case dealt with proof of inherent bias in the arbitration proceedings, which is not found in this case.

¶ 19 The *Metropolitan Property* court was presented with tripartite arbitration in which a plaintiff claimed that a defendant-appointed arbitrator had ex parte meetings with that defendant at its headquarters to discuss the merits of its defenses and to examine potential documentary evidence in the case *prior to selection of arbitration panel.* Furthermore, the arbitrator allegedly made "efforts to discuss the case with the other party-appointed arbitrator prior to the selection of the third arbitrator, [which] could be interpreted as inconsistent with the Code of Ethics and his duty to treat the parties fairly at all stages of the proceedings, exercise independent judgment throughout, and remain free from outside pressures." 780 F.Supp. at 893. Thus, there was strong indication of arbitrator misconduct and partiality *prior to the commencement of arbitration.*

¶ 20 The court in *McCloskey and Company, Inc. v. American Arbitration Association,* 175 Conn. 475, 400 A.2d 274, 275 (1978), quoting *Gaer Brothers,* 130 A.2d at 807, addressed the factual bases for a court's invocation of its equitable powers to end arbitration. The *McCloskey* court stated:

> Proof of the arbitrators' fraud and partiality, *existing before the arbitration proceedings began,* would constitute grounds for avoiding the agreement to submit the controversy to those arbitrators and, hence, grounds for an equitable decree to prevent *those arbitrators from proceeding with the arbitration.*[4]

400 A.2d at 275 (emphasis added).

¶ 21 Herein, as support for their right to termination of arbitration, Defendants complain of discovery issues, purported delay in delivering documents and the arbitrators' refusal to grant a continuance to allow more time to review documents. However, the court in *Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1146 (10th Cir.) *cert. denied, Grace v. Santa Fe Pacific Railroad*

---

4. The *McCloskey* court added: "On the other hand, proof that the arbitrators had made a mistake during the arbitration hearing would not be grounds for avoiding the agreement to submit the controversy to those arbitrators and, hence, not grounds for an equitable decree to prevent those arbitrators from proceeding with the arbitration." 400 A.2d at 275.

*Co.*, 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982) (citations omitted), stated:

> Once it has been established that the parties had entered into a binding agreement to arbitrate, the entire controversy, including the validity (and essence) of the disputed contract must be referred to arbitration. Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators.

Indeed, the Court in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), held that the adjudication of procedural arbitration questions by courts would needlessly delay the resolution of the dispute. After the court has made a determination that the parties agreed to submit the subject matter of a particular dispute to arbitration, any attendant procedural issues are for the arbitrator. *Id.; see also Automotive, Petroleum and Allied Industries Employees Union v. Town and Country Ford*, 709 F.2d 509, 511 (8th Cir.1983). Thus, Defendants are not permitted to resort to the district court for the resolution of questions with regard to procedural issues.

¶ 22 Herein, Defendants also cited specific acts they claimed were indicative of the bias of one of the arbitrators. Defendants' counsel asserted the arbitrator:

(a) rolled his eyes at the plaintiff's counsel during defense counsel's cross-examination of witnesses and presentation of evidence;

(b) repeatedly prevented me from making a record by cutting me off before I could complete my statements;

(c) attempted to break when there was crucial pending question;

(d) refused to allow the extension of time requested on 1/13/96 and several times thereafter; and has

(e) allowed continual coaching of the witnesses through speaking objections by opposing counsel;

(f) [gave] his de facto approval of [Plaintiff's] abusive discovery practices for which [Plaintiff] has never even attempted to explain, and

(g) prejudiced my clients' case by preventing a proper presentation of evidence only recently obtained.

¶ 23 Where the legality of an arbitration award is challenged, the challenging party must show clear evidence of impropriety. *Ormsbee Development*, 668 F.2d at 1147. To remove a case from arbitration, the showing must be equally strong and must involve partiality and/or collusion. However, the actions about which Defendants complain simply do not rise to the requisite level or address the required matters. These complaints may raise valid concerns in a post-decisional appeal, after arbitration, but not at this stage. Thus, we simply do not find that the subjective assertions of Defendants constitute the requisite evidence of bias or partiality of an arbitrator, which is "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Id.*

¶ 24 Defendants also cite the considerable costs of arbitration as lending equitable support for the trial court's action. Indeed, such costs as Defendants relate are lamentable. However, the provision regarding arbitration was agreed to by the parties, and some costs of arbitration must have been envisioned when the agreement was executed. This simply is no basis for removing the action from arbitration.

¶ 25 Based on the foregoing authority, we find that the district court erred in vacating its previous order compelling arbitration. The appealed order is reversed, and the cause remanded with instructions to direct the parties to proceed with arbitration.

¶ 26 REVERSED AND REMANDED WITH INSTRUCTIONS.

REIF, J., and RAPP, J., concur.