2002 OK CIV APP 96

George J. CLARK, Jr.,
Plaintiff/Appellant,

v.

Douglas G. CLARK, Merrill Lynch Pierce Fenner & Smith, Incorporated, a Delaware corporation, Jerry S. Sellars, and Daniel B. Jay, Defendants/Appellees.

No. 95,797.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 25, 2002.

Rehearing Denied June 7, 2002.

Certiorari Denied Oct. 1, 2002.

Gregg R. Renegar, Joan A. Renegar, Oklahoma City, for Plaintiff/Appellant.

Bruce W. Day, Rodney J. Heggy, Bill Powell Guest, Oklahoma City, for Defendants/Appellees, Merrill Lynch Pierce Fenner & Smith, Inc., Charles Brown, Jerry S. Sellars and Daniel B. Jay.

## OPINION

CARL B. JONES, J.

¶ 1   In 1987, Plaintiff's father, George J. Clark ("Settlor"), executed a trust wherein he served as trustee and beneficiary until his death.   Plaintiff asserts that the Trust instrument provided for a life estate for Settlor and upon his death, a life estate for Settlor's wife, Lois Clark.   The instrument originally provided for payments of $350.00 per month to Lois Clark during her lifetime.   A subsequent amendment increased that amount to $550.00 per month.   The Trust instrument apparently did not authorize any other payments from the Trust corpus.   Plaintiff was named the remainder beneficiary of the Trust and the successor trustee upon the death of Settlor.

¶ 2   Settlor died on November 4, 1992, and Plaintiff was appointed successor trustee.   Plaintiff resigned as successor trustee on December 17, 1992, and his son, Douglas G. Clark ("Trustee"), accepted the position of successor trustee the same day.   In about April of 1993, Trustee transferred all the assets of the Trust from its original location at a Florida investment brokerage to the office of Merrill Lynch Pierce Fenner & Smith in Lawton, Oklahoma.   At that time, the Trust was worth approximately $332,784.00 and was generating an annual income of about $25,782.00.   Jerry S. Sellars and Daniel B. Jay served at various times as Merrill Lynch's financial consultants for the Trust account.   Charles Brown was the branch manager of Merrill Lynch's Lawton office and the supervisor of Sellars and Jay.   Hereafter, Merrill Lynch, Sellars, Jay and Brown are collectively referred to as "Merrill Lynch."

¶ 3   The Trust account was set up by Merrill Lynch as both a cash management and a margin account.[1]   The client agreement ("Agreement") signed by Trustee contained an arbitration clause.   Plaintiff did not know that the Trust account had been established at Merrill Lynch, nor did he know about the Agreement or its arbitration clause.   Soon after the account was established, Trustee began dissipating large amounts of money from the Trust.   From May through December of 1993, Trustee withdrew nearly $120,000.00 from the Trust account.   He made large withdrawals from ATM machines through the use of a debit card issued to him by Merrill Lynch, as well as through the use of a Visa card and checks issued for the Trust account.   Lois Clark died in late December of 1996.   Plaintiff thereafter began to inquire of Trustee as to the status of the Trust account, but he was never given a satisfactory response.   In the summer of 1997, Plaintiff discovered that the account had a balance of approximately $43.00.

¶ 4   On February 23, 1999, Plaintiff filed the instant action in the District Court of Comanche County.   The petition alleged negligence and breach of fiduciary duty on the part of both Trustee and Merrill Lynch.   Merrill Lynch moved to stay the proceedings and to compel arbitration pursuant to the Agreement, which was granted by the trial court.   Following a hearing before an arbitration panel of the National Association of Securities Dealers, the panel denied Plaintiff's claims as against Merrill Lynch and its defendant employees.   On October 12, 2000, Plaintiff filed a petition to vacate the arbitra-

---

1.   Black's Law Dictionary 871 (5th ed.1979) defines a "margin account" as:

> Securities industry's method of extending credit to customers.   Under such practice customer purchases specified amount of stock from securities firm by advancing only portion of purchase price, with brokerage firm extending credit or making loan for balance due, and firm maintains such stock as collateral for loan and charges interest on balance of purchase price.

tion decision in the United States District Court for the Western District of Oklahoma. That motion is still pending. On November 2, 2000, Merrill Lynch moved the state trial court to lift the stay and confirm by judgment the award of the arbitration panel. On November 15, 2000, Plaintiff filed a purported "Dismissal" of his original petition and Merrill Lynch thereafter moved to strike Plaintiff's filing. On January 4, 2001, the trial court lifted the stay, confirmed by judgment the arbitration award, and ordered Plaintiff's dismissal pleading stricken. Plaintiff appeals.[2]

¶ 5 Although Plaintiff advances several arguments on appeal, we deem his first assignment of error dispositive. We agree that the trial court erroneously ordered this case sent to arbitration because Plaintiff was not bound by the terms of the Agreement. Before addressing this issue, however, we must first dispose of Plaintiff's claim that the trial court wrongfully rejected his attempt to dismiss this action. Title 12 O.S.1991 § 684 states in relevant part:

A plaintiff may, on the payment of costs and without an order of court, dismiss any civil action brought by him at any time before a petition of intervention or answer praying for affirmative relief against him is filed in the action. A plaintiff may, at any time before the trial is commenced, on payment of the costs and without any order of court, dismiss his action after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervenor or defendant to proceed with the action.

The question here is whether § 684 authorized Plaintiff's eleventh-hour dismissal attempt. We find that it did not.

¶ 6 This court addressed a similar factual situation in *Fleming Companies, Inc. v. Tru Discount Foods,* 1999 OK CIV APP 18, 977 P.2d 367. There, the plaintiff sued the defendants and the defendants counterclaimed. On the plaintiff's motion and following a hearing, the trial court ordered the parties to proceed to arbitration. Nearly two years later, and after considerable discovery and two weeks of arbitration proceedings, the defendants sought to dismiss their claims. This court held:

Title 12 O.S.1991 § 684, does allow Defendants to dismiss their claims at any time before trial is begun. However, the record herein shows: (1) There had been a hearing with evidence presented on the issue of whether the arbitration agreement was enforceable; (2) The trial court had found that the arbitration agreement was enforceable and had ordered arbitration; (3) The parties had participated in the ordered arbitration proceedings; and, (4) Hearings actually had been held in those proceedings. Under such circumstances, we conclude that Defendants could not avail themselves of the provisions of section 684 in a clear attempt to avoid continued arbitration.

*Id.* at ¶ 15, 977 P.2d at 370.

¶ 7 We deem *Fleming's* rationale sound and its holding persuasive. Like *Fleming,* in the present case (1) a hearing was conducted regarding whether Plaintiff's claims were subject to arbitration, (2) the trial court ordered the parties to arbitration, (3) the parties participated in the ordered arbitration proceedings, and (4) hearings were actually conducted in those proceedings. Unlike *Fleming,* the instant case *also includes* the following additional factors: (5) the arbitration proceedings were concluded, (6) the arbitration panel issued a decision against Plaintiff, and (7) the defendants filed a motion in district court to confirm by judgment the award of the arbitration panel. All of these events transpired prior to the time Plaintiff attempted to dismiss his action.

¶ 8 Under the circumstances of this case, we conclude that Plaintiff could not avail himself of the provisions of § 684 in a clear attempt to avoid the adverse award of the arbitration panel. Independent of this fact, we also find that Merrill Lynch's motion to confirm by judgment the award of the arbi-

---

2. A default judgment was subsequently entered in favor of Plaintiff against Trustee. That judgment is not at issue in this proceeding.

tration panel was tantamount to a prayer for affirmative relief against Plaintiff. A dismissal by Plaintiff at that juncture of the proceedings would plainly have run afoul of § 684 by prejudicing the rights of Merrill Lynch to proceed with the action. Accordingly, the trial court correctly rejected Plaintiff's attempted dismissal.

¶ 9 Turning now to the merits of this case, the Agreement provided in relevant part:

> The undersigned agrees that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration.

The Agreement also stated, "The undersigned represents that no one except the undersigned has an interest in the account . . . ." Notwithstanding this later provision, Trustee signed the instrument "Douglas G. Clark Trustee FBO George J. Clark." As previously set forth, Plaintiff did not know that the trust account had been moved to Merrill Lynch or that Trustee had entered into the Agreement.

¶ 10 Initially, we reject Merrill Lynch's argument that Plaintiff should be bound by the terms of the Agreement because his action is based upon or arises from it. Plaintiff contends—and his Petition supports—that he did not know of the existence of the Agreement at the time he filed this action. Plaintiff's cause of action for negligence alleges that Merrill Lynch owed him a duty of reasonable care to protect his interests in the Trust from unreasonable risk of harm and to protect the Trust corpus. His cause of action for breach of fiduciary duty alleges that Merrill Lynch acted willfully, wantonly, recklessly and maliciously in violation of their duties and responsibilities toward Plaintiff as beneficiary of the Trust. In support of his claims, Plaintiff cited that Merrill Lynch set the account up as a margin account despite the fact that the Trust was for the benefit of an aging woman and Plaintiff as residual beneficiary, and that Trustee was issued both an ATM and a Visa card, and he was given check writing privileges notwithstanding that the Trust authorized only one relatively small, preestablished payout per month. The Petition also noted the rapid dissipation of funds from the account and that many of the payments were obviously personal in nature to Trustee. The Petition made no reference to the Agreement or any of its terms.

¶ 11 Merrill Lynch contends that it owed no duty to Plaintiff outside of that arising from the Agreement, specifically asserting that in Oklahoma a fiduciary duty arises only from contract. We disagree. "Under Oklahoma law, a fiduciary relationship exists whenever trust is placed by one person in the 'integrity and fidelity' of another." *FDIC v. UMIC, Inc.*, 136 F.3d 1375 (10th Cir.1998), quoting *In re Estate of Beal*, 1989 OK 23, ¶ 15, 769 P.2d 150, 154. A fiduciary relationship "is not confined to any specific association of parties" and "[n]o precise language can define the limits of the relation." *Beal* at ¶ 15, 769 P.2d at 155, quoting *In re Null's Estate*, 302 Pa. 64, 153 A. 137 (1930). In some cases, the relationship "is a conclusion of law; in others . . . it is a question of fact to be established by the evidence." *Id.*

> The term "fiduciary relationship" is a very broad term and has been applied in circumstances where influence has been acquired and abused and where confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The question is whether a relation in fact exists. *Sellers v. Sellers*, 1967 OK 34, ¶¶ 21, 22, 428 P.2d 230, 236.

*Roberson v. PaineWebber, Inc.*, 1999 OK CIV APP 17, ¶ 10, 998 P.2d 193, 198. "It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring." *Lowrance v. Patton*, 1985 OK 95, ¶ 17, 710 P.2d 108, 111. We conclude that the claims and allegations contained in Plaintiff's Petition are independent of the Agreement.

¶ 12 The Uniform Arbitration Act, 15 O.S.1991 § 801 et seq., confers upon courts the jurisdiction to enforce written

agreements to arbitrate controversies. "The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually." *Voss v. City of Okla. City,* 1980 OK 148, ¶ 5, 618 P.2d 925, 927. However, the basic prerequisite to the commencement of an arbitration proceeding is "[a]n agreement for the submission of an issue to arbitrators." *Id.* at ¶ 5, 618 P.2d at 928. There is no dispute here that under extant contract law Trustee was bound by the terms of the arbitration agreement. The same cannot be said for Plaintiff. In order to have a valid contract there must be mutual consent, or a meeting of the minds, of the parties. *Beck v. Reynolds,* 1995 OK 83, ¶ 11, 903 P.2d 317, 319; 15 O.S.1991 §§ 2, 66. Plaintiff clearly did not agree to be bound by the arbitration agreement because he was neither a party thereto nor knew of its existence. It further cannot be said that Plaintiff waived his constitutional right to access to the courts because he did not voluntarily or intentionally relinquish said right. *See Faulkenberry v. Kansas City Southern Ry. Co.,* 1979 OK 142, ¶ 6, 602 P.2d 203, 206–7 ("waiver" defined as voluntary or intentional relinquishment of a known right).

¶ 13 The issue here is whether Plaintiff, as residual beneficiary of the Trust, is bound by the Agreement's arbitration clause by virtue of Trustee having signed the Agreement. We find that he is not:

"A trustee is not an agent. An agent represents and acts for his principal .... A trustee may be defined generally as a person in whom some estate interest or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts, and is bound, but the agent is not. When a trustee contracts as such, unless he is bound, no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee."

*Riedell v. Stuart,* 1931 OK 475, ¶ 22, 2 P.2d 929, 932, quoting *Taylor v. Davis,* 110 U.S. 330, 334–5, 4 S.Ct. 147, 150, 28 L.Ed. 163. *Accord Mertz v. Owen,* 1942 OK 165, ¶ 29,

126 P.2d 720, 727, also quoting *Taylor, supra.*

¶ 14 In the present case, Trustee is neither an agent for the Trust nor for the Trust's residual beneficiary, Plaintiff. The Agreement entered into between Merrill Lynch and Trustee is "the personal undertaking of" Trustee. The Agreement binds Trustee to arbitrate any controversies arising between himself and Merrill Lynch. It does not bind Plaintiff to arbitrate this case, which arose independent of the Agreement. The trial court erred in sending this matter to arbitration.

¶ 15 REVERSED AND REMANDED.

ADAMS, J., concurs.

KENNETH L. BUETTNER, Judge: (specially concurring).

¶ 16 At issue in this case is whether a trust beneficiary, who was not a signatory to the trust account set up with Merrill Lynch by the trustee, may be compelled to arbitrate based on an arbitration provision included in the trust account agreement. Appellant, the beneficiary of the trust which was purportedly dissipated by the trustee without Appellant's knowledge, filed his petition against Merrill Lynch alleging that Merrill Lynch breached its fiduciary duty to Appellant and also alleging that Merrill Lynch negligently failed to protect the trust corpus.

¶ 17 The majority holds that Appellant may not be bound by the arbitration clause in the account agreement because Appellant did not sign the agreement, was unaware of the agreement, and because a trustee is not an agent of the trust beneficiaries. In addition, the majority holds that the Petition alleges violations of duty independent of the account agreement. Under these circumstances, I agree that the reference to arbitration was error. However, I would not go as far as the majority opinion goes by implying that under no circumstances may a non-signatory be bound contractually to arbitration. It has been held that a party may be bound by an arbitration agreement even when that party has not signed the arbitration agreement. *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 879 (Tex. App.1992). *Eddings* held that trust beneficiaries may be bound by an arbitration clause

included in a trust account agreement entered by the trustee and an investment firm even when the beneficiaries have not signed the account agreement. *Id.* The key is whether the account agreement, containing the arbitration clause, is the underlying basis for all of the beneficiaries' claims; if so, the non-signatory beneficiary will be bound by the arbitration agreement. *Id.* In other words, if the beneficiaries would have no claim against the investment firm in the absence of the agreement containing the arbitration clause, then the beneficiaries are bound by the arbitration clause in the agreement giving rise to their claims, despite the fact they did not sign the agreement themselves. *Id.* I find *Eddings* persuasive.

¶ 18 I concur with the majority's decision to the extent that Appellant is able to articulate some claim against Merrill Lynch not arising out of the account agreement which contained the arbitration clause. At this point, we are dealing solely with allegations in the Petition, and not addressing the validity of those claims either legally or factually. If Appellant's claims all arise out of the account agreement signed by the trustee and Merrill Lynch, then based on the holding in *Eddings*, the trial court correctly ruled that Appellant was bound by the arbitration agreement.