Maziar SHAMS and Susan Shams, Plaintiffs–Appellees,

v.

David HOWARD, Defendant–Appellant.

No. 05CA1936.

Colorado Court of Appeals, Div. III.

Feb. 8, 2007.

Rehearing Denied May 24, 2007.

Allen & Vellone, P.C., Patrick D. Vellone, Jennifer E. Schlatter, Denver, Colorado, for Plaintiffs–Appellees.

Harris, Karstaedt, Jamison & Powers, P.C., James B. Powers, Mark A. Neider, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

In this residential construction dispute over the arbitrability of warranty claims, defendant, David Howard, brings an interlocutory appeal from the trial court's order denying a motion to compel arbitration with plaintiffs, Maziar and Susan Shams. We conclude that the arbitration clause survived expiration of the warranty agreement and that the alleged construction defects arose

under the construction contract at issue. Therefore, we reverse and remand for entry of an order compelling arbitration.

## I. Facts

The background facts are undisputed. Meadow View Custom Homes, LLC built a home for plaintiffs. More than a year after plaintiffs took possession, groundwater caused their basement to flood. They contacted Howard, a member and manager of Meadow View, to remedy the problem. He attempted to mitigate the flooding but the problem persisted, resulting in serious damage to the home. Plaintiffs gave a notice of claim under § 13–20–803.5, C.R.S.2006, which referenced "both statute and warranty."

Plaintiffs sued Meadow View, Howard, and several other defendants. After all other defendants had settled, plaintiffs filed an amended complaint against Howard asserting claims for general negligence, negligent hiring, negligent concealment, negligent design and construction, violation of the Colorado Consumer Protection Act, and fraudulent inducement. They alleged that, "[i]n the design and construction phase," Howard knew of potential water problems but negligently or deliberately failed to disclose "the existence or potential of ground water problems which foreseeably could cause significant damage to the home." Howard's purportedly "defective design and construction" caused the need for "extensive structural repairs, including the reconstruction of the foundation." They further alleged that Howard concealed his knowledge of "the reasonable water table fluctuations" and "gave false information to plaintiffs, in the course of [Howard's] duties as builder."

The construction contract between plaintiffs and Meadow View provided in pertinent part:

(8) Builder does hereby warranty that construction of the residence will be performed in a good and workmanlike manner. . . . After the date of delivery of the possession of the residence to Purchaser, all liabilities, obligations, claims, rights and remedies of Builder and Purchaser arising out of this Agreement, or the Builder's construction and sale of the residence on said property, or any consumer products in the residence, shall be limited to those set forth in such Limited Warranty Agreement, which are incorporated herein by reference.

When plaintiffs took possession of the home, the construction contract expired by its terms.

Plaintiffs and Meadow View then signed the limited warranty agreement, which provided in relevant part: "For a period of one (1) year after the commencement date of the Warranty, Builder expressly warrants the home will be free from defects due to non-compliance with the construction standards . . . in the Addendum attached hereto . . . [and] from Structural Defects." (The record does not include the addendum.) The warranty agreement also stated: "(7) In the event [Meadow View] denies warranty coverage upon any claim submitted by Purchaser, [Meadow View] will so notify Purchaser, and should Purchaser wish to contest such determination, the matter shall be submitted to arbitration. . . ."

Howard sought a hearing on the motion to compel arbitration. After taking testimony, the trial court denied the motion. It reasoned that (1) the construction contract expired when plaintiffs took possession, (2) the arbitration clause appeared only in the warranty agreement, (3) the warranty agreement expired before the home flooded, and (4) the arbitration clause did not survive its expiration.

This appeal followed. *See Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.,* 98 P.3d 915, 917 (Colo.App.2004)("An order denying a motion to compel arbitration is immediately appealable.").

## II. Survival of the Arbitration Clause

■ Howard contends the motion to compel arbitration should have been granted because the arbitration clause survived expiration of the warranty agreement and that clause encompasses this dispute. We review the arbitrability of a claim de novo, *Eagle Ridge, supra,* address these contentions in turn, and conclude that Howard is correct as

to both of them. We express no opinion whether Howard must be a direct or accommodation party to the warranty agreement in order to benefit from the arbitration clause because plaintiffs have not presented that issue.

## A.

■ Generally, arbitration clauses are severable from contracts. *R.P.T. of Aspen, Inc. v. Innovative Commc'ns, Inc.*, 917 P.2d 340 (Colo.App.1996); *see also Christensen v. Flaregas Corp.*, 710 P.2d 6 (Colo.App.1985) (termination of contract does not terminate the effect of an arbitration clause if the dispute arises under the contract). Thus, "absent a clear intent to the contrary, the duty to arbitrate survives ... termination of the contract." *R.P.T. of Aspen, Inc., supra*, 917 P.2d at 342.

The parties have cited no Colorado case, and we have found none, applying this rule to a contract that expired by its terms, like the warranty agreement here, as opposed to a contract that was terminated by one of the parties, like the contracts in *R.P.T. of Aspen, Inc., supra*, and *Christensen, supra*.

■ The majority rule in other jurisdictions is that despite contract expiration, an arbitration clause survives as to disputes which "arise under the contract." *See Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205, 111 S.Ct. 2215, 2225, 115 L.Ed.2d 177 (1991) (applying federal law). *See generally* 1 Martin Domke, *Domke on Commercial Arbitration* § 12:2, at 12–2 (3d ed. 2006) ("It is a well-established principle of arbitration law that disputes which arose during the lifetime of a contract may be arbitrated after the expiration of the contract.").

We consider this view well reasoned and a logical extension of Colorado law dealing with terminated contracts. Applying it here, we turn to whether this dispute arose under the contract, and we conclude that it did.

## B.

■ In Colorado, "[a]rbitration is a favored means of dispute resolution." *Gergel v. High View Homes, LLC*, 996 P.2d 233, 235 (Colo.App.1999). Initially, the "question of arbitrability is one for the court to decide." *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298 (Colo.App.2000).

■ But "[a]ny doubts about the scope of an arbitration clause should be resolved in favor of arbitration." *Gergel, supra*, 996 P.2d at 235. Thus, arbitration must be compelled absent " 'positive assurance' that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute." *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003). And where a reasonable basis exists for construing an agreement in support of arbitrability of the claim, the scope of the arbitration agreement will ultimately be determined by the arbitrator. *Sopko v. Clear Channel Satellite Servs., Inc.*, 151 P.3d 663 (Colo.App.2006).

■ A postexpiration dispute arises under the contract where "it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing Div., supra*, 501 U.S. at 206, 111 S.Ct. at 2225; *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir.1998) (applying federal law) (claims arise out of a contract where there are "rights which to some degree have vested or accrued during the life of the contract and merely ripened after termination, or relate to events which have occurred at least in part while the agreement was still in effect" (quoting *United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F.2d 1022, 1024–25 (10th Cir.1990))).

■■ Whether a dispute falls within an arbitration clause should be guided by the "factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled." *City & County of Denver v. Dist. Court*, 939 P.2d 1353, 1364 (Colo.1997). A claim sounding in tort "does not necessarily take it out of a clause requiring arbitration of a contract dispute." *Gergel, supra*, 996 P.2d at 235; *see also A.C.*

*Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862 (Colo.2005).

Here, the amended complaint pleaded claims arising from Howard's alleged acts and omissions during "the design and construction phase." The trial court found, with record support, that the claims concerned Howard's alleged acts and omissions occurring before the construction contract expired. Consequently, because the claims relate to "Builder's construction and sale of the residence on said property," as stated in paragraph 8 of the construction contract, plaintiffs' choice of tort and statutory claims does not alone avoid the arbitration clause. *See Gergel, supra,* 996 P.2d at 237 ("plaintiffs' statutory claims arising under the Consumer Protection and Soil Disclosure Act are based on defendants' alleged failure adequately and clearly to inform plaintiffs that their home was being built on expansive soil").

The court further found, also with record support, that these acts and omissions were not known to and could not have been discovered through reasonable inquiry by plaintiffs until after the one-year period set forth in the warranty agreement had expired. Nevertheless, the claims in the amended complaint generally involve whether the house was built in a "good and workmanlike manner," as expressly warranted in paragraph 8 of the construction contract. This warranty merged into the warranty agreement after plaintiffs took title to the home. Thereafter, it could be enforced only by a notice to Meadow View, "within the period of the term of this warranty," according to the "Subsequently Discovered Defects" section of the warranty agreement claim procedure. *See Gergel, supra* (similar merger of rights under purchase contract into limited warranty agreement).

The warranty agreement includes "Structural Defects," which encompass "foundation systems and footings." An exclusion addresses "[c]hanges in the level of underground water table which were *not reasonably foreseeable* at the time of construction of the home" (emphasis added). By negative implication, reasonably foreseeable changes in the water table level would not be excluded. *See Ball Corp. v. Fisher,* 51 P.3d 1053 (Colo.App.2001); cf. *State ex rel. Paluf v. Feneli,* 69 Ohio St.3d 138, 630 N.E.2d 708 (1994) (recognizing that maxim of express intention and implied exclusion applies to contracts).

The amended complaint alleges "ground water problems which foreseeably could cause damage to the home," as well as design and construction defects that caused "reconstruction of the foundation." Comparing these allegations to the above-quoted provisions of the warranty agreement, we cannot say with "positive assurance" that this dispute falls outside the terms of the warranty agreement.

### C.

We reject plaintiffs' contention that this dispute falls outside the terms of the warranty agreement based on the intent of the parties.

Arbitration clauses survive termination of a contract absent "clear intent to the contrary." *R.P.T. of Aspen, Inc., supra,* 917 P.2d at 342. We have concluded that for purposes of arbitrability, no distinction exists between termination and expiration of a contract, and that here a reasonable basis exists for treating this dispute as within the arbitration clause. Because we discern no such contrary intent, we further conclude that the motion to compel arbitration should have been granted.

### 1.

When seeking to ascertain the intent of the contracting parties, courts should look to "the language of the instrument itself." *Radiology Prof. Corp. v. Trinidad Area Health Ass'n,* 195 Colo. 253, 256, 577 P.2d 748, 750 (1978). Extraneous evidence is considered only when the contract is ambiguous. *McNichols v. City & County of Denver ex rel. Newton,* 120 Colo. 380, 209 P.2d 910 (1949).

If more than one reasonable interpretation concerning an arbitration clause exists, a court must choose the interpretation that favors arbitration. *See Gergel, supra.*

Here, plaintiffs do not contend that the warranty agreement is ambiguous, and they offered no extrinsic evidence as to its interpretation. Instead, they argue that all rights under the construction contract merged into the warranty agreement, which expired one year after they took possession. According to plaintiffs, this structure demonstrates that the parties intended their entire contractual relationship, including the arbitration clause, to expire, after which nothing could be resolved through arbitration.

But we do not accept plaintiffs' argument as the only reasonable way to interpret the warranty agreement.

The expiration clause of the warranty agreement is in a different section than the arbitration clause. The arbitration clause is silent as to whether it survives expiration. Thus, the warranty agreement could also be reasonably interpreted as intending that the arbitration clause survive expiration.

Accordingly, because we perceive from these provisions no "clear intent" that the arbitration clause expire when the warranty agreement expired, we must interpret the warranty agreement to favor arbitration.

### 2.

We are not persuaded otherwise by plaintiffs' argument that because the arbitration clause in the warranty agreement is narrow, the strong presumption for continuing arbitrability does not apply. Plaintiffs contrast the facts of this case with those of *R.P.T. of Aspen, Inc., supra*, 917 P.2d at 342, where the arbitration clause called for the arbitration of "any dispute" arising under the agreement, which the division referred to as "the broad language of the arbitration provision here."

We do not read the arbitration clause before us so narrowly. The clause may be invoked if Meadow View "denies warranty coverage upon *any* claim" (emphasis added) submitted by plaintiffs under the warranty claim procedure. While this language may be less broad than the "any dispute" clause in *R.P.T. of Aspen, Inc., supra*, the word "any" has an expansive meaning, "without limit or restriction." *Nat'l Farmers Union*

*Prop. & Cas. Co. v. Estate of Mosher*, 22 P.3d 531, 534 (Colo.App.2000).

Moreover, because the construction contract merged all the parties' rights and liabilities from the construction and sale of the home into the warranty agreement, only disputes in connection with claims involving warranty coverage could arise. Thus, no purpose would have been served by drafting the arbitration clause in the warranty agreement more broadly, to embrace "disputes" rather than "claims."

Accordingly, we conclude the trial court erred in denying the motion to compel arbitration. On remand, the trial court shall grant the motion to compel arbitration and stay the case pending the arbitration outcome. *See* § 13–22–207(7), C.R.S.2006.

We do not hereby determine that plaintiffs have a viable warranty claim, despite lapse of the one-year period during which the alleged defects were latent; that all plaintiffs' tort claims are necessarily also warranty claims; or that lack of any viable warranty claim means plaintiffs have no remedy at all. We hold only that an arbitrator must make these decisions, at least in the first instance. *See Jefferson County Sch. Dist. No. R–1 v. Shorey*, 826 P.2d 830, 840 (Colo.1992) ("[A] court, in deciding the issue of arbitrability, should not rule on the merits of the underlying claim but, rather, should relegate that issue, in accordance with the intent of the parties, to the arbitrator.").

The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge TAUBMAN and Judge ROMÁN concur.