Vickie L. SMITH, individually and as parent and next friend of Emilee Anne Stephens; and Caitlin Smith, Plaintiffs–Appellees,

v.

MULTI–FINANCIAL SECURITIES CORPORATION, a Colorado corporation, Defendant–Appellant.

No. 06CA0361.

Colorado Court of Appeals, Div. V.

Sept. 20, 2007.

Godfrey & Lapuyade, P.C., Keith D. Lapuyade, Steven R. Schumacher, Lori C. Pappas, Englewood, Colorado; J. Randolph Robida, P.C., J. Randolph Robida, Denver, Colorado, for Plaintiffs–Appellees.

Rothgerber Johnson & Lyons, LLP, William D. Nelson, Denver, Colorado; Rothgerber Johnson & Lyons, LLP, S. Kato Crews, Colorado Springs, Colorado, for Defendant–Appellant.

ORDER VACATED AND CASE
REMANDED WITH
DIRECTIONS

Opinion by Judge CARPARELLI.

Defendant, Multi–Financial Securities Corporation (the investment company), appeals the trial court's order denying its motion to stay proceedings and to compel arbitration in

the action filed by plaintiffs, Vickie Lynn Smith, individually and as parent and next friend of Emilee Anne Stephens, and Caitlin Smith (beneficiaries), alleging claims of liability under the Colorado Securities Act, respondeat superior, and negligent supervision. We vacate and remand with instructions.

## I.  Procedural History

The beneficiaries of a trust sued the investment company with which the trust had an account.  They allege that the trustee breached his fiduciary duties to the trust and that, because the trustee was also a registered representative of the investment company, the investment company is liable.

It is undisputed that the alleged conduct upon which the claims are based was committed by Keith Vaughan, who was both a representative of the company and the trustee of the trust of which the plaintiffs are beneficiaries.  The beneficiaries allege that Vaughan's conduct with regard to the account breached his fiduciary duties as the trustee of the trust and violated § 11–51–501, C.R.S.2006, of the Colorado Securities Act, and that the investment company is liable for Vaughan's conduct.

The investment company moved to stay the proceedings and to compel arbitration under arbitration clauses in the account application and an account information form. The trial court denied the investment company's motion in a minute order, stating only that "arbitration is inappropriate in this matter."  This interlocutory appeal followed.

## II.  Arbitrability

The investment company contends that the trial court erred when it denied the motion to stay and to compel arbitration.  We agree.

## A.  Facts

Vaughan completed an account application and signed it as the company's representative and as trustee of the trust.  Below Vaughan's signature as the company's representative are initials, apparently of someone other than Vaughan, indicating the company's approval.

The reverse side of the application includes the following:

IV.  Arbitrability of Disputes

. . . .

In consideration of opening one or more accounts for you, you agree that any controversy between us arising out of or relating to your account, transactions with or for you, or the construction, performance, or breach of this agreement whether entered into prior, on or subsequent to the date hereof, shall be settled by arbitration in accordance with the rules, then obtaining of the National Association of Securities Dealers, Inc.

The second agreement, which is dated three years later, is a completed account information update.  Once again, Vaughan signed on behalf of the company and as trustee of the trust.  A manager's signature appears below Vaughan's two signatures.

The reverse side of the account information update form provides:

I agree that any dispute between you and me arising out of this agreement shall be submitted to arbitration conducted under the then applicable provisions of the code of arbitration procedure of NASD.

## B.  The Complaint

The complaint alleges that from at least May 9, 2000, through termination of the trust, trust assets were held in the account, and that, in his capacity as a professional investment advisor and trustee, Vaughan acted as a fiduciary for the benefit of the plaintiff beneficiaries.

It also alleges that, contrary to his fiduciary duties as trustee, Vaughan made investments that were not suited to the trust's and the beneficiaries' needs, with knowledge of or in reckless disregard of the unsuitability of the investments.  It alleges further that Vaughan made improper cash disbursements to himself.  The complaint does not allege that Vaughan acted contrary to any provisions in the account application or account information update form.  Instead, it alleges that his conduct violated his fiduciary duties. The complaint states three claims for relief.

First, the complaint alleges that Vaughan's acts and omissions in violation of his duties as trustee are imputed to the investment company as his employer, and, thus, that the investment company is liable under a theory of respondeat superior. Second, it alleges that the investment company failed to take adequate steps (1) to supervise him; (2) to audit his compliance with industry standards; (3) to prevent him from mismanaging the trust assets and making unsuitable investments on behalf of the trust; and (4) to prevent him from making unauthorized cash disbursements to himself from the account. Third, it alleges that Vaughan violated the Securities Act by making unsuitable investments on behalf of the trust and by making unauthorized cash disbursements to himself, and that the investment company is liable under the Securities Act because it directly and indirectly controlled him as its representative.

### C. Scope of the Agreement

We first conclude that although the beneficiaries' claims relate to the trust instrument, they arise out of and relate to the account agreement, and therefore, are arbitrable.

### 1. Law

■ We review trial court interpretations of agreements to arbitrate de novo. *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo. 2003); *Winter Park Real Estate & Invs., Inc. v. Anderson,* 160 P.3d 399, 403 (Colo.App. 2007). The party seeking to stay proceedings in a judicial forum and to compel arbitration has the burden of establishing that the matter is subject to arbitration. *GATX Mgmt. Servs., LLC v. Weakland,* 171 F.Supp.2d 1159, 1162 (D.Colo.2001).

■ When determining whether a claim is within the scope of an arbitration agreement, we apply ordinary principles of contract interpretation. *Eagle Ridge Condo. Ass'n v. Metro. Builders, Inc.,* 98 P.3d 915, 917 (Colo.App.2004). There is a presumption favoring arbitrability

unless the court can say with "positive assurance" that the [arbitration clause] is not susceptible of any interpretation that encompasses the subject matter of the

dispute. This positive assurance test is applied in "gray areas" which require contract interpretation by the court to determine the parties' intentions.

*City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1363 (Colo.1997) (citations omitted) (quoting *Jefferson County Sch. Dist. No. R–1 v. Shorey,* 826 P.2d 830, 840 (Colo.1992), and 1 Martin Domke, *The Law of Practice on Commercial Arbitration* § 12.03 (rev. ed. Supp.1993) ).

■ Courts should not permit creative legal theories to undermine this presumption. Therefore, we look beyond the legal cause of action and consider the factual allegations upon which the claims are premised. *City & County of Denver v. Dist. Court,* 939 P.2d at 1364; *Winter Park Real Estate & Invs., Inc.,* 160 P.3d at 405; *Shams v. Howard,* 165 P.3d 876, 881 (Colo.App.2007)(negligence claims sounding in tort were nonetheless subject to construction contract's arbitration clause as they related to the company's alleged acts and omissions during the construction).

■ When an arbitration clause uses the phrase "arising out of" or "relating to," it is broad in scope. Any doubts regarding the scope of an arbitration clause must be resolved in favor of arbitration. *City & County of Denver v. Dist. Court,* 939 P.2d at 1364.

In *Eychner v. Van Vleet,* 870 P.2d 486, 488 (Colo.App.1993), investors sued their broker and the investment company that employed him. The investors alleged that while the broker was acting in his fiduciary capacity as their broker and investment advisor, he gave them bad advice about an investment. The broker sought to compel arbitration under the terms of the account agreement between the investors and the investment company, which required arbitration of any controversy "arising out of or relating to" any of the accounts or transactions with the investment company, its agents, and its employees. The investors argued that the transactions in question arose from and related to the investment, not the account with the investment company. A division of this court concluded that the broker could compel arbitration with regard to transactions between himself and

the investors that involved accounts with the investment company. *Id.* at 490–91.

■ Under the doctrine of respondeat superior, an employer or principal is liable for acts that its employee or agent commits on behalf of the employer or principal within the scope of the employment or agency. *Raleigh v. Performance Plumbing & Heating*, 130 P.3d 1011, 1019 (Colo.2006); *Veintimilla v. Dobyanski*, 975 P.2d 1122, 1123 (Colo.App. 1997).

■ In contrast, "the tort of negligent supervision applies to instances where the employee is acting outside his scope of employment." *Keller v. Koca*, 111 P.3d 445, 448 (Colo.2005). "To establish liability, the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Id.*

Under § 11–51–604(5)(a), C.R.S.2006, of the Securities Act, a corporation that directly or indirectly controls a person liable under subsections (1), (2), (2.5), (2.6), or (3) of section 604 is liable jointly and severally with and to the same extent as the controlled person, unless the corporation proves that it did not know, and in the exercise of reasonable care could not have known, of the existence of the facts supporting the alleged liability.

### 2. Analysis

The essential facts upon which the beneficiaries rely to render the investment company liable for Vaughan's conduct are (1) Vaughan's signature on the account documents as the investment company's representative; and (2) his use of the account. The claims raise issues that include (1) the scope of Vaughan's duties and responsibilities on behalf of the investment company; (2) the extent to which the investment company had a duty to prevent an unreasonable risk of harm to the beneficiaries; and (3) the extent of the investment company's control of Vaughan.

The arbitration provisions apply to controversies regarding "the construction, performance, or breach of [the] agreement" as well as controversies "arising out of or relating to [the] account" and "transactions with or for [the client]." The arbitration provision in the account information update also applies to disputes "arising out of [the] agreement."

We conclude that the beneficiaries' claims arise out of (1) the fact that Vaughan signed the account application as the investment company's representative; (2) the duties the investment company incurred when he did so; and (3) the transactions Vaughan made with and for the trust. Thus, we conclude that the claims relate to the account. We cannot say with positive assurance that the arbitration agreements here are not susceptible of any interpretation that encompasses the subject matter of this dispute. Therefore, we must apply the presumption favoring arbitrability.

In addition, the arbitration agreements do not require that to be arbitrable, controversies must arise exclusively out of or relate exclusively to the account. Nor do they require that controversies must allege breaches of specific provisions of the account agreements.

Therefore, we conclude that the beneficiaries' claims are arbitrable because they arise out of and relate to the account and transactions involving the account, even though they also arise from and relate to breaches of fiduciary duties arising out of and relating to the trust instrument.

### D. Beneficiaries Are Bound

Next we conclude the beneficiaries are bound by the arbitration provisions in the account agreements.

The investment company must not only show that the claims are arbitrable under the agreement, but it must also show that the beneficiaries, who did not sign the agreement, are bound by the arbitration provisions. As to this issue, the investment company argues that the beneficiaries (1) should be estopped from embracing the account agreements to support their claims and, at the same, time avoiding the arbitration provisions in those agreements; and (2) are bound because they are third-party beneficiaries of the account agreements. We agree with the

first argument and need not address the second.

### 1. Estoppel

We conclude that the beneficiaries are estopped from avoiding the arbitration provisions in the account agreements because they are seeking to invoke the duties the investment company allegedly owed them as a result of the signature of its representative on the account documents.

### a. Law

Generally, when the requirement to arbitrate is created by an agreement, it can be invoked only by a signatory of the agreement, and only against another signatory. 1 Domke, *supra*, § 13.1, at 13.2. Nonetheless, based on common law contract principles, nonsignatories may be bound by agreements to arbitrate. *Id.* Courts have bound nonsignatories to arbitration agreements under principles of agency, incorporation by reference, veil-piercing, assumption or implied conduct, estoppel, successor in interest, and third-party beneficiary. *Id.* at 13.4.

In *Parker v. Center for Creative Leadership*, 15 P.3d 297, 297–99 (Colo.App.2000), the agreement explicitly provided that all claims between the signatories or an employee of one of the signatories must be submitted to arbitration. The plaintiff, an employee of one of the signatories, sued the other signatory for negligence, breach of contract, negligent misrepresentation, and intentional misrepresentation. Although the plaintiff was not a signatory, a division of this court concluded that he was bound by the arbitration provision because the signatories explicitly provided for arbitration of disputes involving employees. The division also held that, because the plaintiff had stated claims based on the defendant's alleged responsibilities under the agreement, he could not, at the same time, argue that the other provisions of that agreement did not apply to him. *Id.* at 298–99; *see also Lee v. Grandcor Med. Sys., Inc.*, 702 F.Supp. 252, 255 (D.Colo. 1988).

Neither party cites any Colorado state court case involving an arbitration agreement that does not explicitly require nonsignatories to arbitrate disputes and claims by nonsignatories based on benefits arising out of the same agreement. However, there are several such cases in other jurisdictions.

In *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir.2000), the corporate plaintiff bought a product from a distributor, which had a contract with the manufacturer. The plaintiff sued the manufacturer, alleging breach of contract and breach of warranty based on the plaintiff's purchase order with the distributor. When the manufacturer sought to compel arbitration under the terms of the distributor-manufacturer contract, the plaintiff argued that the manufacturer could not compel arbitration because the plaintiff was not a signatory to the same contract.

The court ruled that because the distributor-manufacturer contract provided part of the factual foundation for every claim asserted by the plaintiff against the manufacturer, the plaintiff could not seek to enforce those rights and avoid the contract's requirement that disputes "arising out of" the contract be arbitrated. *Id.* at 418.

Similarly, in *In re Jean F. Gardner Amended Blind Trust*, 117 Wash.App. 235, 70 P.3d 168 (2003), the trustee of a trust opened a securities account with an investment company to assist him in investing the trust's assets. When the value of the trust fell, the beneficiary sued the trustee and the investment company, alleging breach of fiduciary duty and negligence. She argued that the arbitration provision in the investment agreement did not bind her because she did not sign the agreement. A division of the Washington Court of Appeals held that the beneficiary was bound by the arbitration provision because her claims arose directly out of the transactions made pursuant to the investment account agreement. *Accord Edward D. Jones Co. v. Ventura*, 907 So.2d 1035 (Ala.2005)(if a nonsignatory seeks to obtain the benefit of a contract, he or she may not avoid the application of the arbitration provision); *Georgia Power Co. v. Partin*, 727 So.2d 2 (Ala.1998)(a party who claims the benefits of an agreement also assumes its burdens); *Ex Parte Dyess*, 709 So.2d 447

(Ala.1997)(nonsignatory to insurance policy bound by arbitration provision because his claims sought benefits under the policy); *In re Blumenkrantz,* 14 Misc.3d 462, 824 N.Y.S.2d 884 (Sur.Ct.2006)(beneficiary of a trust was bound by an arbitration provision in an investment account agreement because her claims arose out of transactions in the trust's account); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874 (Tex.App.1992) (beneficiaries of a trust were bound by an arbitration clause in the account agreement because their claims arose out of transactions in the trust's account).

The beneficiaries rely on *Clark v. Clark,* 57 P.3d 95, 98 (Okla.Civ.App.2002). There, the trustee of a trust signed a client agreement with an investment company. The agreement contained an arbitration provision. Soon after the trustee established the account, he began dissipating trust funds. Unlike the facts here, there was no allegation that the trustee also signed the agreement as a representative of the defendant investment company.

The beneficiary of the *Clark* trust sued the investment company for negligence, alleging that the investment company owed him a duty of reasonable care to protect his interests in the trust from unreasonable risk of harm and to protect the trust corpus. The trust beneficiary also alleged that the investment company acted willfully, wantonly, recklessly, and maliciously in violation of its duties and responsibilities to him as a beneficiary of the trust.

The investment company argued that it owed no duties to the trust beneficiary other than those arising from the account agreement.

The *Clark* court rejected the investment company's argument that the trust beneficiary's claims were based on or arose from the agreement. The court explained that the trust beneficiary did not know about the agreement when he filed suit and that his negligence claim made no reference to the agreement or any of its terms. The court concluded that the trust beneficiary's claims as stated in his petition were independent of the client agreement. The court further concluded that the trustee was not an agent for the trust or the trust beneficiary and, as a consequence, the trustee's signature on the agreement could not be treated as a signature of an agent of the trust beneficiary. In a special concurring opinion, a member of the division stated:

> The key is whether the account agreement, containing the arbitration clause, is the underlying basis for all of the beneficiaries' claims; if so, the non-signatory beneficiary will be bound by the arbitration agreement. In other words, if the beneficiaries would have no claim against the investment firm in the absence of the agreement containing the arbitration clause, then the beneficiaries are bound by the arbitration clause in the agreement giving rise to their claims, despite the fact they did not sign the agreement themselves.

*Id.* at 100 (Buettner, J., concurring) (citations omitted).

The Washington court in *Jean F. Gardner,* 70 P.3d at 170, agreed with the *Clark* majority's agency analysis. However, it also agreed with the concurring opinion's statement that the key issue is whether the account agreement provides the underlying basis of the beneficiary's claims.

### b. Analysis

Here, we do not resolve the question of arbitrability on the basis of a principal-agent relationship between Vaughan and the beneficiaries. Therefore, that aspect of the *Clark* court's ruling does not affect our decision. In addition, the facts here differ from those in *Clark* in that the beneficiaries knew about the account agreement when they filed suit, and explicitly relied on Vaughan's signature on behalf of the company as a basis for liability.

The only factual allegations connecting the investment company to this trust and these beneficiaries are the allegations that the investment company maintained an account owned by the trust, and Vaughan signed the account agreements both as the investment company's representative and as trustee of the trust.

To prove liability based on respondeat superior, the beneficiaries rely on the essential

intermediate inference that, because Vaughan signed the account agreements as the investment company's representative, the company was his employer, and, as such, is liable for acts he committed on its behalf within the scope of his representative capacity. This inference is necessary to prove that Vaughan's duties under the trust instrument were within that scope, and, thus, that the investment company is liable to the beneficiaries for Vaughan's alleged breaches of duties to the trust.

To prove negligent supervision, the beneficiaries rely on the essential intermediate inference that, because Vaughan signed the account agreement as the company's representative, the investment company was his employer, and, as such, had a duty to prevent unreasonable risks of harm that Vaughan posed to the trust outside the scope of his employment.

Thus, the beneficiaries seek to benefit from the account agreements, specifically the duties undertaken by the investment company with regard to the accounts and the conduct of its account representative. We conclude that the beneficiaries are estopped from avoiding the arbitration provisions of the same agreements whose benefits they seek to enforce.

### 2. Third–Party Beneficiaries

Because we conclude that the beneficiaries are estopped from asserting that the arbitration provision is not binding, we need not determine whether the trust beneficiaries are third-party beneficiaries of the account agreement.

Order vacated and case remanded with instructions to grant defendant's motion to stay and compel arbitration.

DAILEY and NIETO *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.